UNITED STATES DISTRCT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**TWYLA PRINDLE,** individually and on behalf
of a class of persons similarly situated,

       Plaintiff,                         Case No.: 3:13-cv-01349-MMH-PDB

v.

**CARRINGTON MORTGAGE
SERVICES, LLC,**

       Defendant.

                                  /

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS (Doc No. 71)**

Plaintiff, TWYLA PRINDLE ("Ms. Prindle") opposes the Motion to Dismiss her action

filed by Defendant, Carrington Mortgage Services LLC ("Defendant"). The Defendant asserts

Ms. Prindle's claims are moot or alternatively that she fails to state claims upon which relief may

be granted. As explained below, the Defendant is in error on both grounds.

**I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S
CLAIMS AND THEREFORE THE MOTION TO DISMISS SHOULD BE DENIED**

There are three reasons why the Defendant's Motion to Dismiss based on its offer of

judgments fails. First, the Plaintiff has preserved her right to go forward in this class action. The

Court stayed the filing of the motion to certify a class within 90 days of the removal of this action

to this Court without objection by the Defendant.[1] Second, an unaccepted offer of judgment does

not moot or otherwise authorize the entry of judgment over a plaintiff's objection. Third,

Defendant's offers of judgments do not provide complete relief to the Plaintiff under her initial

---

[1] This action was removed to this Court on November 4, 2013. See Doc. 1. Plaintiff moved the Court to stay Rule
4.04(b) on January 30, 2014 – 88 days from removal. See Doc. 32. The order granting the Motion to Stay is Doc.
39 entered on February 5, 2014.

complaint or the current complaint.  The Second Amended Complaint presently before the Court

was filed by Plaintiff with leave by the Court.  Defendant did not oppose the Motion to Amend.

Under Rule 15, the Second Amended Complaint relates back to the initial filing – not some other

convenient date selected by Defendant.  Importantly, Defendant advances the same arguments in

prior motions which were denied by this Court.   Accordingly, Plaintiff hereby adopts her

prevailing arguments in prior motions.

### A.   Defendant Should Not Be Allowed To "Pick Off" The Named Plaintiff In A Class Case

In response to the filing of a class action, many defendants now seek to avoid being held

accountable to a class of similarly situated individuals by offering judgments to plaintiffs.  Courts

in this district have addressed the effect of an offer of judgment in a class action setting.  In

*Neurocare Institute of Central Florida, P.A. v. Healthtap, Inc.*  2014 WL 1236062 (M.D. Fla.

2014), the Court rejected the notion that Rule 68 trumps all aspects of Rule 23 but instead read

them together.  The *Healthtap* Court described the conflict between the two rules:

> The issue here is a conflict between the results of a Rule 68 offer of judgment
> which, under the *Damasco* rationale permits the Defendant to "pick off" the
> Plaintiff, and the underlying purpose of Rule 23, which is to enable small claims
> that would be impractical to litigate individually to be brought collectively. *See
> Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1091–92 (9th Cir.2011) (Rule 23's
> principle concern is "aggregation of similar, small, but otherwise doomed
> claims"). The *Weiss* court seeks to resolve that conflict by allowing a plaintiff a
> reasonable amount of time after filing the complaint to seek class certification. If
> the motion is filed without "undue delay," it relates back to the filing of the
> complaint, thus preserving the court's jurisdiction to proceed notwithstanding an
> intervening Rule 68 offer of judgment.

*Id.* at *3.  Ultimately, the court in *Healthtap* resolved the conflict by holding that a Motion to

Certify a Class under Rule 23 filed in accordance with Local Rule 4.04(b) will relate back to the

initial filing of the complaint.  Therefore, the post filing Rule 68 offer does not "pick off" the

Plaintiff.  This is in accord with the decision by the Third and Tenth Circuits: *Weiss v. Regal*

*Collections*, 385 F.3d 337 (3d Cir. 2004) and *Lucero v. Bureau of Collection Recovery, Inc.* 639 F.3 1239 (10th Cir. 2011).   The approach by these two Circuit Courts is contrary to the 7th Circuit's decision in *Damasco v. Clearwire Corp*, 662 F.3d 891 (7th Cir. 2011).[2]

 In this case, Plaintiff sought and was granted a stay of the time period provided by Local Rule 4.04(b) before the 90 day period had run. Therefore, if this Court adopts the approach consistent with the Third and Tenth Circuit decisions, the Defendant's offer of judgments will not pick off the named Plaintiff.

This Court should adopt the approach of the Third and Tenth Circuits over the Seventh circuit.  The Third and Tenth Circuits' approaches harmonize the two different Rules.  On the other hand, the approach set forth by the Seventh Circuit does not harmonize the Rules but instead elevates Rule 68 over Rule 23 to effectively eliminate it.  Rule 23 allows a Defendant to be held responsible when the claims of the person harmed by them are relatively small making it difficult if not impossible to justify multiple individual actions.  If Rule 68 is allowed to trump Rule 23 in its entirety, then any Defendant can avoid substantial liability by paying a relatively small amount to a single person.  This effectively eliminates Rule 23 since what Defendant will not pay a trifling, relatively small amount to avoid being held accountable for a much larger amount based on the aggregation of the claims of all class members?  The Seventh Circuit's approach is a death knell for class actions.

Applying it here, the individual class members are unlikely to be in a position to bring individual actions.   The class consists of people who most likely lack resources to pursue individual lawsuits, having gone through bankruptcy and losing their assets less a small amount

---

[2] The *Healthtap* Court notes there are decisions in this District that adopt the *Damasco* decision. *See* 2014 WL 1236062 at *2.

that may be retained as exempt.   Adopting the Seventh Circuit approach would effectively eliminate any recourse if what the Plaintiff alleges about Defendant's actions is proven.

### B.     An Unaccepted Rule 68 Offer Of Judgment Does Not Moot A Plaintiff's Claims Or Authorize Entry Of Judgment Over The Plaintiff's Objection

The Defendant's Rule 68 offers of judgments did not moot Plaintiff's claim, nor does it justify dismissal of the Second Amended Complaint.   Rule 68 is only a mechanism by which a defendant can offer to have judgment entered against it.   If the offer is not accepted, it is a nullity except for purposes of determining whether the defendant is entitled to costs at the conclusion of the case.   *See Delta Air Lines, Inc. v. August*, 450 U.S. 346,101 S. Ct. 1146 (1981).   An unaccepted offer neither moots a claim nor otherwise authorizes the entry of judgment over the plaintiff's objection.

The Ninth Circuit recently recognized in *Diaz v. First Am. Home Buyers Protection Corp.*, __ F.3d __, 2013 WL 5495702 (9th Cir. Oct. 4, 2013), that Justice Kagan's reasoning in her dissent in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. __, 133 S. Ct. 1523, 1533 (2013) is compelling and requires the conclusion that a Rule 68 offer cannot moot anything because it does not deprive a court of the ability to grant effectual relief.[3]   In *Genesis*, Justice Kagan concluded that an unaccepted Rule 68 offer moots a plaintiff's claim is "bogus."   *Id.* at 1532.   Even a Rule 68 offer that would "provide complete relief on [the plaintiff's] individual claim," does not deprive the plaintiff of a concrete interest in the outcome of a case or the court of the ability to grant effectual relief:

> We made clear earlier this Term that "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."

---

[3] The *Genesis* decision did not reach the issue of whether Rule 68 can moot a claim since the Court found it was not before it since the Respondents had not contested the issue. 133 S.Ct. at 1529.   Additionally, the *Genesis* case was dealing with a wage and hour collective action and not a class under Rule 23. 133 S. Ct. 1532 (Whatever significance "conditional certification" may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23.") The *Genesis* decision does not offer guidance on the Rule 23 issue before this Court.

*Chafin v. Chafin*, 568 U.S. __,__, 133 S. Ct. 1017, 1023 (2012) (internal quotation marks omitted). "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Ibid*. (internal quotation marks omitted). By those measures, an unaccepted offer of judgment cannot moot a case.

When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. As every first year law student learns, the recipient's rejection of an offer "leaves the matter as if no offer had ever been made." *Minneapolis & St. Louis R. Co. v. Columbus Rolling Mill*, 119 U.S. 149, 151, 7 S. Ct. 168 (1886). Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that "[a]n unaccepted offer is considered withdrawn." Fed. Rule Civ. Proc. 68(b). So assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted.

*Id.* at 1532–34.:

This case vividly illustrates the paradoxical consequences of the theory that a Rule 68 offer of judgment moots a case. For example, if a Rule 68 offer indeed mooted a case and deprived the court of subject-matter jurisdiction over it, the court would have no authority to enter judgment on the offer, whether it was accepted or not, because a court cannot grant a party relief in a case in which it has no jurisdiction. *See Miccosukee Tribe of Indians v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1277 (11th Cir. 2010). Yet that is what Defendant requests this Court to adopt.

Further, a case is not moot when, to resolve it, a court must address the merits of a party's claims. *See Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 570 (6th Cir. 2013). That is exactly what the Defendant is now asking this court to do, without a trial and without applying the standards applicable to motions for summary judgment under Federal Rule of Civil Procedure 56, to summarily decide that Ms. Prindle is entitled to no more than what Defendant offered her. A court should not, under the guise of a jurisdictional ruling under Rule 12(b)(1), resolve merits

issues in a way that short-circuits a party's entitlement to a trial (or to a determination that a trial is unnecessary because there are no disputed issues of material fact and that summary judgment is appropriate under Rule 56).

The Eleventh Circuit has not decided whether a Rule 68 offer has mootness consequences, but its reasoning in *Zinni v. ER Solutions*, 692 F.3d 1162, strongly suggests that an unaccepted (and therefore lapsed) Rule 68 offer cannot moot a case.  In *Zinni*, the Court held that an informal settlement offer that was made outside Rule 68 and did not include an offer to have judgment entered against the defendant could not moot a plaintiff's claim because a "mere promise to pay" did not eliminate a "live controversy" over whether the plaintiff was entitled to a judgment on his claims. *Id.* at 1167–68.  The *Zinni* Court noted that some appellate courts had held that an offer of judgment that would provide a plaintiff with full relief could moot his claims, while others had disagreed.  *See Id.* at 1166–67 & n.8.  The *Zinni* Court, however, had no need to resolve that issue, *Id.* at 1166 n.8, because under any view of the matter, an offer that did not provide full relief, but merely offered something less valuable to the plaintiff than the enforceable judgment sought, could not moot anything. *See Id.* at 1166–68.

Although *Zinni* did not reach the issue, its reasoning is consistent with the view later expressed by Justice Kagan in *Symczyk*. The Court in *Zinni*, like Justice Kagan's dissenting opinion in *Symczyk*, is grounded on the principle that "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  *Id.* at 1166 (quoting *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F. 3d 1210, 1216 (11th Cir. 2009)).

An unaccepted Rule 68 offer of judgment no more deprives a court of the ability to grant meaningful relief than did the informal settlement offers at issue in *Zinni*.  Like those settlement

offers, the rejected Rule 68 offer here, which is "considered withdrawn" by operation of Rule 68(b) and cannot be offered in evidence as an admission of liability of the defendant or for any other purpose (other than to establish an entitlement to costs in the circumstances described in Rule 68(d)), does not redress Plaintiff's injury or stand as an obstacle to the court's resolution of the question of the defendant's liability and entry of an effectual judgment satisfying Plaintiff's claims. Defendant's offers therefore cannot moot anything.

In sum, the theory that unaccepted Rule 68 offers of judgment moot or otherwise authorize entry of judgment on claims for which, if accepted, they would have provided complete relief, has no basis in any accurate understanding of the meaning of mootness or the terms of the Rule. Rather, dismissing claims based on such offers serves only to terminate actual cases or controversies in ways that are unauthorized by any rule of law. As Justice Kagan advised in *Symczyk*, courts that have adopted the view that Rule 68 offers can moot claims should "[r]ethink" that position, while those that—like this Court—have not yet taken a position on the issue should heed her caution: "Don't try this at home." *Symczyk*, 133 S. Ct. at 1534 (Kagan, J., dissenting).

### C.   Plaintiff's Claims Are Not Moot Because She Made Claims For Actual Damages And Statutory Damages In Excess Of $5,000, Pre-Judgment Interest, Injunctive Relief, And Reserved The Right To Seek Punitive Damages As Allowed Under The Law

As explained above, since the class certification motion relates back to the initial filing, the post filing offers of judgment do not divest the court of jurisdiction. Similarly, the offers of judgment do not deprive the court of subject matter jurisdiction or the Court would be without jurisdiction to enter the proffered judgment. Moreover, here the Defendant's offer of judgments did not completely satisfy the Plaintiff's claims and therefore do not end the case as the Defendant is angling to do.

A review of the relief sought by Plaintiff supports Plaintiff's position that Defendant's offers do not offer complete relief.  The Plaintiff seeks the following relief in this action:

(1)     <u>Actual damages</u> based on amounts Ms. Prindle has paid to the Defendant after her bankruptcy filing, which she alleges consists of "monthly payments to the mortgage holder in excess of $4,000".  Second Rev. Compl., ¶ 39.   Ironically, Defendant claims it cannot be held responsible for payments made to any other servicer yet the Defendant maintains that it is entitled to collect for amounts that became due before it was the servicer.  The Defendant cannot have it both ways.  Accordingly, the Defendant can be held responsible for amounts paid by Ms. Prindle for a period it claims to be entitled to recover amounts.

(2)     <u>Statutory damages</u> under the Fair Debt Collection Practices Act (FDCPA), which permits up to $1,000 for statutory damages.  Second Rev. Compl., ¶ 25.

(3)     <u>Statutory damages</u> under the Florida Consumer Collection Practices Act (FCCPA) which permits up to $1,000.  Second Rev. Compl., ¶ 47.

(4)     <u>Injunctive relief</u> allowed by the FCCPA;

(5)     <u>Prejudgment interest</u> on her actual damage claims since the sum is a liquidated amount;

(6)     Plaintiff reserved the right to seek <u>punitive damages</u> as allowed by the FCCPA.

Defendant contends that since it made offers of judgment for $5,000 that it has satisfied the entirety of the Plaintiff's potential recovery, and therefore, it has successfully picked off a putative class representative.  As set forth above, the Defendant's math is curious and its offer does not cover all of the relief that Plaintiff may be able to recover.  Moreover, efforts to pick off

a Plaintiff as a putative class representative have been rejected when the Plaintiff has timely moved for class certification in the case. Ms. Prindle has timely sought class certification. *See* Sections I., A. and B., *infra.*

## II.   DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) SHOULD BE DENIED BECAUSE PLAINTIFF HAS STATED CLAIMS UPON WHICH RELIEF MAY AND SHOULD BE GRANTED

### A.   Standard of Review for 12(B)(6)

The standard of review on a motion to dismiss is familiar to the Court, but bears repeating. Plaintiff's Amended Complaint contains sufficiently detailed factual allegations to "raise a reasonable expectation that discovery will reveal evidence" in support of her claim and thus plausibly suggest relief is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hishon v. King v. Spalding*, 467 U.S. 69, 73 (1984); *accord Lanfear v. Home Depot, Inc.*, 679 F. 3d 1267, 1271 n. 4 (11th Cir. 2012); *Am. United Life Ins. Co. v. Martinez*, 480 F. 3d 1043, 1066 (11th Cir. 2007). This burden of pleading is not set at such a high burden, as Defendant would lead this Court to believe. In fact, it is well established that this threshold is "exceedingly low." *AXA Equitable Life Ins. Co. v. Infinity Financial Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla., 2009) (*quoting Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985)). Further:

> [T]o survive a motion to dismiss, the complaint need only set forth sufficient factual matter to state a claim that is facially plausible; a claim is facially plausible when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.

*Twombly*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Motions to dismiss are highly disfavored and are only granted in rare occasions. *Esposito v. Prudential Equity Grp., LLC*, No. 3:08-cv-575-J-16JRK, 2008 WL 4999214, at *1 (M.D. Fla.

Nov. 20, 2008).  A complaint only needs to "provide sufficient notice of the claim and the grounds upon which it rests so that a 'largely groundless claim' does not proceed through discovery and 'take up the time of a number of other people . . . .'" *Roberts v. Landrum*, No. 4:12cv129-RS/CAS, 2013 WL 1502165, at *2 (N.D. Fla. Mar. 14, 2013) (*citing Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Moreover, a complaint does not need detailed factual allegations to survive a motion to dismiss, only grounds for plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Finally, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Patrick Media Grp., Inc. v. City of Clearwater*, 836 F. Supp. 833, 835 (M.D. Fla. 1993) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**B.     The Bankruptcy Code Does Not Provide The Exclusive Remedy To Ms. Prindle**

The centerpiece of the Defendant's argument on why the Plaintiff cannot assert claims under the consumer protection statutes is the twelve year old Ninth Circuit decision in *Walls v. Wells Fargo Bank*, 276 F. 3d 502 (9th Cir. 2002).  Other than courts within the Ninth Circuit that are bound by it, few courts have agreed with its conclusion that a bankruptcy filing and discharge eliminates one's rights to protection under consumer protection laws.  In fact, the Third and Seventh Circuits have both rejected the holding. *See Simon v. FIA Card Services, N.A.*, 732 F. 3rd 259 (3rd Cir. 2013); *Randolph v. IBMS, Inc.*, 368 F. 3d 726 (7th Cir. 2004).

Viscerally the *Walls* decision contravenes that the discharge is to assist debtors not limit their rights.  Under a statutory analysis, there is nothing in the discharge statute that states that the grant of the discharge interferes with, reduces or eliminates rights under consume protection cases.  Recently, the Eleventh Circuit in *Crawford v. LVNV Funding LLC*, 758 F. 3d. 1254, (11th

Cir. 2014), held that LVNV's filing of a proof of claim in a bankruptcy on a time-barred debt stated a valid claim under the Fair Debt Collection Practices Act.  The *Crawford* court noted it did not need to decide whether the FDCPA claim could be made in light of the automatic stay under the bankruptcy Code since it had been "artfully dodged."  *Id.* at 1262, FN 7.

Plaintiff submits that *Walls* should not be followed for a combination of other independent reasons.  First, there is nothing in the discharge related statutes, 11 U.S.C. §§ 524 and 727, that states it is intended to limit or restrict any consumer protection laws that may be applicable to debtors.  Second, it is antithetical that a creditor who is subject to a discharge order entered by a court that directs it to stop collection activities enjoys a better or preferred position to someone who is trying to improperly collect a debt from a person.  The only effect of legal determination by a bankruptcy court that a particular debt should not be collected should be to make it easier to demonstrate that collection efforts are an assertion of a legal right that the collector does not possess.  Third, the Defendant repeatedly asserts that there is no private cause of action for violation of the discharge.  In the absence of any private cause of action based solely on the violation of the discharge, other claims that may be asserted as private causes of action become more important because "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."  *Silkwood v. Kerr-McGee Corp.*  464 U.S. 238, 251, 104 S.Ct. 615, 623 (1984).  In *Silkwood*, the Court held that state claim claims were not preempted by the existence of federal regulations.  The Court noted:

> Indeed, there is no indication that Congress even seriously considered precluding the use of such remedies either when it enacted the Atomic Energy Act in 1954 and or when it amended it in 1959. This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct.

*Id.*

Here, the Defendant has not presented any evidence that Congress decided against allowing other claims based on the violation of the discharge granted to debtors under the Bankruptcy Code.  The silence supports that other Congress did not intend that persons injured by violating a discharge would have no remedy in a private cause of action. Lastly, and perhaps of lesser concern, once the discharge is entered the case is closed and there is no longer any pending bankruptcy case.  Therefore, there is no potential overlap between the bankruptcy case and a subsequent case under the consumer protection laws.

> **C.     The FCCPA Is Not Preempted Because The Defendant Has Failed To Show How The FCCPA Claims Interfere With The Bankruptcy Code In Any Way**

For the same reasons set forth above, Plaintiff submits that the Bankruptcy Code does not preempt her claims under the FCCPA.  The Defendant cites the decisions in *Pertuso v. Ford Motor Credit Co.*, 233 F. 3d 417 (6th Cir. 2000) and *Bessette v. Avco Financial Services, Inc.*, 230 F. 3d 439 (1st Cir. 2000).  However, both cases are distinguishable since neither addressed consumer protection claims, and both cases were limited to deciding whether a common law state unjust enrichment claim could proceed.

What can be gleaned from these cases is that the preemption arising from the Bankruptcy Code is not "complete preemption."  Instead, the Court in *Bessette* relied on implied preemption that exists:

> (1) where the federal statutory scheme is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law, or (2) where a particular state law is in direct conflict with the federal law to an extent that the statutes cannot coexist.

230 F. 3d at 447.

The *Bessette* court also acknowledged that it had allowed state law claims to proceed that were predicated on a violation of bankruptcy law.  *See Vahlsing v. Commercial Union Ins. Co.,*

*Inc.*, 928 F.2d 486, 489 (1ˢᵗ Cir. 1991).   The state law claims asserted in *Vahlsing* were predicated on a violation of the automatic stay which is in effect while the bankruptcy case is pending.

Where the Bankruptcy Code is comprehensive or "pervasive" is during the pendency of the bankruptcy case.  This is because the bankruptcy Code is primarily concerned with the matters affecting the estate and estate property.  *In re Challenge Air Intern., Inc.*  952 F.2d 384, 388 (11th Cir. 1992) ("Jurisdiction of the bankruptcy court is limited to matters affecting the estate and the parties' conflicting claims to estate property.") Once a case is closed, the interests of the Bankruptcy Code recede.  Therefore, there is no longer estate property since the estate property has either been administered by the appointed Trustee or abandoned back to the debtor.  *See* 11 U.S.C. § 554 (c).

In *Sears Roebuck and Co. v. O'Brien*, 178 F. 3d 962 (8ᵗʰ Cir. 1999), the Court squarely addressed whether state laws predicated on letters being sent to debtors were preempted.  The issue presented was an Iowa state law that required correspondence to be sent to counsel of a represented person.  The Eighth Circuit held that there was no preemption of the state law claims. In doing so, the Court noted that:

>     a. Sears did not claim it was impossible to comply with the federal and state law;
>
>     b. There was no reason to conclude that Sears was being impeded in the pursuit of any federal bankruptcy rights; and
>
>     c. The state law did not present any obstacle to the full enjoyment of Sears' federal rights.

*Id.* at 967.

Defendant fails to make any show how allowing them to be held accountable for taking actions which they had no legal right to take is incompatible with the Bankruptcy Code.  There is no claim that the bankruptcy discharge is incompatible with a state law that prohibits them from

making demands they have no legal right to make. Instead, the federal and state laws are completely compatible. Nor does the Defendant identify any state right that has impeded any of Defendant's federal rights. Simply put, there is no federal right for the Defendant to pursue a discharged debt.

Moreover, as noted above in the discussion of the Supreme Court's decision in *Silkwood v. Kerr-McGee Corp.* 464 U.S. 238, 251, 104 S.Ct. 615, 623 (1984), the absence of a private cause of action under the federal law makes the existence of other private causes of action become more important because "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." For these reasons, the FCCPA claims alleged by Ms. Prindle are not preempted.

### D.     Plaintiff Has Stated Claims Under The FCCPA And FDCPA

The Defendant asserts that the Plaintiff's claims under the FDCPA and FCCPA suffer three defects. As discussed below, the Defendant's arguments are unsupportable. *See* Defendant's Motion at Part II, B at p. 14.

> 1.      The Statements And Other Documents Sent By The Defendant Made Specific Demands For Payments And Are "Communications" Under Both the FDCPA And FCCPA

The Defendant begins its argument with a discussion of the difference between in personal liability and *in rem* liability. Defendant contends that Plaintiff has somehow confused the two. That is not the case. The Defendant, not the Plaintiff, endeavors to improperly meld the two together to avoid liability for its wrongful actions.

Defendant tries to deflect attention from its periodic statements - that boldly demand payment from Ms. Prindle for debts that were discharged - by claiming somehow it was required to send the periodic statements. This is simply not true. The Defendant also asserts it "is also required to send periodic statements for amounts not discharged." Defendant's Motion at p. 16.

The only citation for this statement is 24 CFR § 1024.41, but Defendant apparently meant to state § 1026.41.[4]  Notwithstanding, this provision does not mandate that Defendant provide periodic notices to the Plaintiff.  The official Interpretation makes clear that it only applies to "…any portion of the mortgage debt that is not discharged" *See* Official Staff Interpretation to 419(e)(5) Consumers in Bankruptcy, 2.i. [5]  The Commentary states that "[t]he periodic statement is not required for any portion of the mortgage debt that is discharged…"   *Id.* at 2. ii. There is no amount of the Plaintiff's debt that was not discharged so the Defendant's contention has no relevance here.

Defendant asks the court to consider its periodic statements in light of its alleged obligation to send them. Yet, the periodic statements were not required and the sending of the statements should be considered in light of the fact that it was a voluntary decision to send the periodic statements to Ms. Prindle.  Indeed, the letters must be viewed from the perspective of the least sophisticated consumer. *LeBlanc v. Unifund CCR Partners,* 601 F. 3d 1185, 1193 - 1194 (11th Cir. 2010) ("We employ the "least-sophisticated consumer" standard to evaluate whether a debt collector's communication violates § 1692e of the FDCPA").  One must step back from being a Judge and attorney and see it through the eyes of a lay person who is not versed in legal issues.  Plaintiff submits under this analysis there are several problems with the letter.

As noted above, there was no requirement for the Defendant to send the statements.  Plaintiff's debt had been discharged.  The voluntary letters set forth a payment due date, a current payment amount, a past due payment amount, unpaid late charges, other charges and then a total amount due. *See e.g.* Page 2 of Exhibit B to Plaintiff's Second Amended Complaint, [Document 58-3].  From the perspective of the "least sophisticated consumer," the statement appears to be a

---

[4] The Defendant later identifies 24 CFR § 1026.41. See Defendant's Motion at p. 18, FN 9.
[5] Available online at http://www.consumerfinance.gov/eregulations/1026-41/2013-30108_20140118#1026-41-e-5

thorough demand for payment of the amounts owed.  *See e.g., McLaughlin v. Phelan Hallinan & Schmieg, LLP,* 756 F. 3d 240, 246 (3rd Cir. 2014) ("It is reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt. Thus, the Letter constitutes debt collection activity under the FDCPA and misrepresentations contained therein may provide a basis for relief.")

On the front page of the Account Statements sent to Ms. Prindle, there is a place titled "Important Messages" and "Special Messages," but neither of these spots contain any disclaimers that the "Total Amount Due" does not mean what it says.  *See* [Doc, 58-4, compilation of Mortgage Invoices.]  If Ms. Prindle did not owe the "Total Amount Due," that would be the most "Important Message" to her or at least qualify as a "Special Message".  Yet, Defendant did not include this information on the front of the page.  Instead, Defendant argues that information that Defendant chose to relegate to the back of the document cures the problem.

However, the information that Defendant relies on comes in the form of an inconspicuous boiler plate disclaimer that makes only a qualified statement beginning with "If" - a word leaving the least sophisticated consumer to make legal determinations as to whether she owes the "Total Amount Due" claimed on the front page. The fact that the disclaimer begins with "If" is itself misleading because the Defendant knew or should have known that the Plaintiff had been discharged and there is no if about whether she is liable for the "Total Amount Due".  The Defendant's failure to directly and concretely advise this person that she does not owe anything when the Defendant directly and concretely states a "total Amount Due" cannot be rectified by including a paragraph on the back page of the document that said "If" she was discharged. The voluntariness, location, inconspicuousness and lack of directness supports a reasonable inference

16

that the disclaimer was not designed to nor does it effectively and adequately communicate to the lease sophisticated consumer that she did not owe the "Total Amount Due".

The Court in *Barton v. Ocwen Loan Servicing LLC*, 2013 WL 5781324 (D. Minn. 2013) addressed and rejected Defendant's argument that a boiler-plate bankruptcy disclaimer somehow cures a demand for payment.  In *Barton*, the defendant's notices contained a disclaimer on the back which stated:

> If you or your account are subject to a pending bankruptcy or your obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt.

*Id.* at *6.  Nonetheless, the court denied defendant's motion for summary judgment based on plaintiff's FDCPA claims since "a reasonable juror could find that the notices were an attempt to collect a debt."  *Id.* at *6.  Here, Defendant makes the same argument, based solely on the fact that the mortgage invoices at issue included a boilerplate bankruptcy disclaimer on the backside.  However, Ms. Prindle's mortgage invoices also attempted to collect substantial sums from Ms. Prindle and the first page of the invoices are dedicated solely to the amount Defendant sought to collect from Ms. Prindle.   [Doc, 58-4, compilation of Mortgage Invoices.]   Therefore, the rationale used in *Barton* applies to the facts of this case, since Defendant's invoices and letters attempted to collect a debt.

In *Stratton v. Portfolio Recovery Associates*, ___F. 3d ____ (6th Cir. October 24, 2014) (slip opinion)[6] the Sixth Circuit addressed a claim against a debt collector because it included a claim for interest (that was not recoverable) in a lawsuit.  The District Court dismissed the FDCPA claim distinguishing "claims made in court from the type of abusive  tactics most often invoked under the FDCPA" and saw "no need to invoke the protections" of the Act "when a claim is made to the court."  The Sixth Circuit sternly rejected the District Court's interpretation and

---

[6] Opinion can be found at: http://www.ca6.uscourts.gov/opinions.pdf/14a0266p-06.pdf

held "[b]oth Supreme Court precedent and other traditional tools of statutory construction make clear that the district court's understanding of the FDCPA is untenable. …. In sum, absent strong evidence of an exemption, the FDCPA's protections are available wherever unscrupulous debt collection practices might be found – and most certainly in litigation." *Id.* at pp. 8 and 9.

The *Stratton* court also considered the complaint filed by the Defendant.  The Defendant claimed it did not state a claim because the reference to statutory interest was "aspirational request" and not a demand.   However, the Sixth Circuit disagreed with this contention, instead holding:

> PRA's allegation was hardly a "request," simple or otherwise. PRA's numbered allegations in the complaint included that "The Defendant(s) *owes* Plaintiff $2630.95, with interest thereon at the rate of 8% per annum."(Emphasis added.) Never mind the least sophisticated consumer standard—even a sophisticated consumer would read that numbered paragraph from the complaint to be a factual allegation rather than an "aspirational request." Thus, PRA's argument fails for two reasons: PRA's allegation was not a "simple request" and there is no protection for a representation that is inaccurate. Saying that Stratton owed $2630.95 plus whatever interest the court chooses to award is simply not the same as saying that Stratton owed $2630.95 plus 8% interest from the date GE charged off her account.

*Id.* at p. 11.

The same can be said for the Defendant's various communications with Ms. Prindle. Anyone receiving the invoices that set forth a "Total Amount Due" is a concrete demand for payment. In the end, the only effect of the "disclaimer" identified by the Defendant is as an admission by the Defendant that the front page of the statement does in fact demand money from Ms. Prindle.  If it did not, there would be no need for any disclaimer.

In addition, the cases cited by the Defendant on Page 19 of its Motion are not discussed in any detail by the Defendant.  This omission is telling since the cases are clearly distinguishable, and some are misinterpreted entirely by the Defendant.  For instance, the Defendant cites *In Re*

*Pultz*, 400 B.R. 185, 190 (Bankr. D. Md 2008) for the proposition: "account statement merely informative; dismissing FDCPA claim, in part, because debt validation required by law." However, in *Pultz*, the Court dismissed the FDCPA claim because it was asserted against a creditor – since creditors cannot be held liable under the FDCPA.

Similarly, the Defendant cites the decision in *Marshall v. Deutsch Bank Nat'l Trust Co.*, 2011 WL 345988 (E.D. Ark. 2011).  Defendant states in its parenthetical that the case stands for the proposition: "no FDCPA violation for billing statements."  The only issues issue before the *Marshall* Court centered on the provisions of 15 U.S.C. § 1692g of the FDCPA. Importantly, section 1692g mandates notices to be sent within 5 days of the debt collector's "initial communication" with the debtor.  The *Marshall* Court held that the complaint failed to state a claim against the servicer because it was not a debt collector and therefore had no duty to send the notice required by 1692g.  Further, the court determined that if there were a notice required, it had been provided by the attorneys who had been retained for the foreclosure, and therefore, the billing statements could not be considered the initial communication.

*In Re Manning*, 505 B.R. 383 (D.N.H. 2014) involved unusual facts. The debtor had entered into a reaffirmation agreement during the course of his bankruptcy but for an unknown reason it was never filed with the Court.  When the debtor discovered it two years later, he contacted the lender to inquire about it because he learned the lender was not reporting his timely payments to the credit reporting agencies.  It did not involve any claim under the FDCPA.  As a result of that inquiry, the lender asked him to bring the account current and to enter into a second reaffirmation agreement. The debtor sued claiming the Defendant violated the discharge injunction "by refusing to report the Plaintiff's payments to the credit reporting agencies unless he reaffirmed his debt with CitiMortgage."  And …"by refusing to report the Plaintiff's payments

to the credit reporting agencies unless the Plaintiff made the payments necessary to bring his account current."   505 B.R. at 386.

There is a significant difference between claims under the discharge provisions of the Bankruptcy Code and the FDCPA.  First, the burden of proof imposed by the *Manning* court was clear and convincing.  Second, there is no requirement to examine the matter through the eyes of the least sophisticated consumer.  Therefore, decisions relating to claims based on a discharge under 11 U.S.C. § 524 do not provide guidance on claims under the FDCPA.

These distinctions also distinguish the decision in *In Re Mele*, 486 B.R. 546 (Bankr. N.D. Ga. 2013), from the FDCPA claims before this Court. There were different standards and a different viewpoint applied by the Court when it analyzed the claims before it.

The same is also true for the decision in *In Re Ramirez*, 280 B.R. 252 (C.D. Cal. 2002). The issue in *Ramirez* was a claim based on 11 U.S.C. § 524.  Moreover, there is a significant factual difference that highlights the deficiencies on the Defendant's statements.  There, the Court noted that the post discharge GMAC statements were altered from its regular monthly statements to include the following affirmative statement: "VOLUNTARY PAYMENTS MUST BE TIMELY RECEIVED BY GMAC IF YOU WISH TO RETAIN POSSESSION OF THE CAR".  *See* 280 B.R. at 258.

For these reasons, Ms. Prindle submits she has adequately identified communications that support her claim under the FDCPA.  Additionally, the same is true of her FCCPA claims since the FCCPA adopts the decisions interpreting the FDCPA as valid interpretations of the FCCPA. *See* Fla. Stat. § 559.77 (5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.").  Additionally, to the extent that

the FDCPA is more protective, the Florida legislature has also directed that the more protective of the state or federal act shall apply.  *See* Fla. Stat. § 559.552 ("In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.")

> 2. Defendant's Conduct Violates The FCCPA Since It Was Enjoined From Attempting To Collect The Debts At Issue

Plaintiff has sufficiently alleged that Defendant violated the FCCPA by attempting to collect debts previously discharged in bankruptcy.  Plaintiff has also alleged that Defendant was "enjoined from doing so," and "knew that the debt they were attempting to or did collect from Plaintiff and the Class Members had been discharged."  *See* Rev. Second Am. Compl. ¶¶ 21, 45. As stated in *Barton*, *supra*, when viewing the facts in the light most favorable to Plaintiff, "[a]t a minimum, there are fact questions as to whether [defendant] sent out these notices with the knowledge that the debt had been discharged in bankruptcy."  *Id.* at *6.  To date, Plaintiff has propounded discovery to Defendant requesting information regarding its knowledge, practices and procedures related to the collection of discharged debts.  Therefore, Plaintiff has adequately pled a violation of the FCCPA, and is entitled to discovery in order to establish her claims that Defendant knew or should have known that Plaintiff's debts, and the debts of all Class Members, were discharged in bankruptcy.

> 3. Applicable Statute of Limitations

Plaintiffs' claims relate back to the date of the filing of the original complaint in this matter, on or about September 17, 2013.   Because the majority of, if not all of the communications at issue were received within the applicable statute of limitations applicable to the FDCPA, FCCPA, and Declaratory Judgment Act, Defendant's arguments regarding these communications and the statute of limitation defense fails.

III.    **PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF UNDER THE FCCPA AND THE DECLARATORY JUDGMENT ACT**

Plaintiff is entitled to declaratory relief under the FCCPA and Declaratory Judgment Act. *See* Fla. Stat. § 559.77(2) (court "may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part."); 28 U.S.C. §§ 2201. Defendant first argues that the declaratory judgment claims should be dismissed based on its arguments relating to the validity of Plaintiff's FCCPA and FDCPA claims. However, as addressed above, Plaintiff has stated a valid claim under the FCCPA, and is entitled to declaratory relief pursuant to the FCCPA and Declaratory Judgment Act. Moreover, Plaintiff's Complaint alleges a clear need for the declaratory relief sought, and because Defendant has provided no basis for the dismissal of such claims, Defendant's motion to dismiss must be denied.

IV.    **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss the Second Amended Complaint in its entirety.

Dated: October 31, 2014                    **VARNELL & WARWICK, P.A.**

                                           By:    /s/ Janet R. Varnell
                                                  Janet R. Varnell
                                                  Florida Bar No.:  0071072
                                                  Brian W. Warwick
                                                  Florida Bar No.:  0605573
                                                  Steven T. Simmons, Jr.
                                                  Florida Bar No.:  0091654
                                                  P.O. Box 1870
                                                  Lady Lake, FL  32158
                                                  Telephone: (352) 753-8600
                                                  Facsimile:  (352) 504-3301
                                                  jvarnell@varnellandwarwick.com
                                                  bwarwick@varnellandwarwick.com
                                                  ssimmons@varnellandwarwick.com

**MAX STORY, P.A.**
Max Story
Florida Bar No: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone:  (904) 372-4109
Facsimile:  (904) 758-5333
max@maxstorylaw.com

**LEGG LAW FIRM, LLC**
Scott Craig Borison (Pro Hac Vice)
1900 S. Norfolk St.
Suite 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile:  (301) 620-1018
Borison@legglaw.com

Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this <u>31st</u> day of October, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and that a true and correct copy of the foregoing has been furnished via electronic mail to:

Attorneys for Defendant

**AKERMAN LLP**
Justin E. Hekkanen
Justin.hekkanen@akerman.com
Emory.woodard@akerman.com
50 North Laura Street
Suite 3100
Jacksonville, FL  32202

William P. Heller
William.heller@akerman.com
Lorraine.corsaro@akerman
Las Olas Center II, Suite 1600
350 East Las Olas Blvd.
Ft. Lauderdale, FL  33301-2229

Lawrence Silverman
lawrence.silverman@akerman.com
Andrea S. Hartley
andrea.hartley@akerman.com
One S.E. Third Avenue
25th Floor
Miami, FL 33131-1714

/s/ Janet R. Varnell
Janet R. Varnell