```
 1              IN THE UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION


 3

 4   TWYLA PRINDLE, individually
     and on behalf of a class of persons
     similarly situated,
 5            Plaintiff,
     v.                            Case No. 3:13-cv-1349-J-34PDB
 6   CARRINGTON MORTGAGE SERVICES,
     LLC,
 7            Defendant.

 8   _____

     KIMBERLY CARMAN, individually
 9   and on behalf of a class of persons
     similarly situated,
10            Plaintiff,
     v.                            Case No. 3:14-cv-1224-J-34MCR
11   GREEN TREE SERVICING, LLC,
              Defendant.

12   _____

13                 TELEPHONIC MOTION HEARING
           BEFORE THE HONORABLE MARCIA MORALES HOWARD
14                UNITED STATES DISTRICT JUDGE

15

16                    Jacksonville Division
                      September 25, 2015
17                      Courtroom 10B
                          4:03 p.m.
18

19

20   OFFICIAL COURT REPORTER:

21       Cindy Packevicz, RPR, FCRR
         221 N. Hogan Street, #128
22       Jacksonville, FL  32202
         Telephone:  904.301.6843  Fax:  904.301.6847
23

24       (Proceedings reported by stenography; transcript
     produced by computer.)

25
```

Cindy Packevicz, RPR, FCRR      904.301.6843

A P P E A R A N C E S

COUNSEL FOR PLAINTIFF:
(via speakerphone)

    **JANET R. VARNELL, Esquire**
    Varnell & Warwick, PA
    P.O. Box 1870
    Lady Lake, FL  32158
    Email:  jvarnell@varnellandwarwick.com

    **MAX H. STORY, Esquire**
    Max Story, Esq.
    Suite 100
    328 2nd Avenue North
    Jacksonville Beach, FL  32250
    Email:  Max@storylawgroup.com

    **SCOTT CRAIG BORISON, Esquire**
    Legg Law Firm, LLC
    5500 Buckystown Pike
    Frederick, MD  21703
    Email:  Borison@legglaw.com


COUNSEL FOR DEFENDANT:
(via speakerphone)

    **CELIA CHAPMAN FALZONE, Esquire**
    Akerman LLP
    Suite 3100
    50 N Laura Street
    Jacksonville, FL  32202
    Email:  Celia.falzone@akerman.com

    **LAWRENCE D. SILVERMAN, Esquire**
    Akerman Senterfitt
    1 SE 3rd Avenue, 25th Floor
    Miami, FL  33131
    Email:  Lawrence.silverman@akerman.com

    **JOHN WILLIAM BUSTARD, Esquire**
    Shutts & Bowen, LLP
    201 S Biscayne Blvd, Suite 1500
    Miami, FL  33131

    Email:  Jbustard@shutts.com

<u>P R O C E E D I N G S</u>

1

2   September 25, 2015                              4:03 p.m.

3                       *   *   *   *   *

4       (Court called to order.)

5           THE COURT:  Good afternoon.  We are here --

6           MS. VARNELL:  Good afternoon.

7           THE COURT:  Sorry.  We're here on two cases.

8   3:13-cv-1349-J-34PDB, *Twyla Prindle versus Carrington Mortgage*

9   *Services*, *LLC*.

10          Ms. Varnell, are you on the line?

11          MS. VARNELL:  Yes, ma'am.

12          THE COURT:  All right.  And is it just you or do you

13  have Mr. Story as well?

14          MR. STORY:  I'm here as well, Your Honor.

15          MS. VARNELL:  Yeah, we have Mr. Story.  Also -- also

16  Scott Borison for the plaintiffs in both cases.

17          THE COURT:  I'm sorry, I didn't understand the last

18  thing you said.

19          MS. VARNELL:  Scott Borison is also present.  He is

20  an attorney of record on both cases.

21          THE COURT:  Okay.  All right.  And do I have

22  Mr. Silverman?

23          MR. SILVERMAN:  Yes, Judge.

24          And with me is Celia Falzone.

25          THE COURT:  Okay.  And then we're also here on

Cindy Packevicz, RPR, FCRR      904.301.6843

1  3:14-cv-1224-J-34MCR, *Kimberly Carman versus Green Tree*
2  *Servicing, LLC*.

3          And Ms. Varnell, Mr. Story, and Mr. Borison are here
4  for Ms. Carman.

5          And, Mr. Bustard, are you with us?

6          MR. BUSTARD:  Yes, Your Honor.

7          THE COURT:  Okay.  So we heard oral argument on --
8  Wednesday, was it? -- Wednesday of this week on --

9          MS. VARNELL:  Yes, Your Honor.

10          THE COURT:  -- the -- Carrington's motion to dismiss,
11  which is Document No. 71, and Green Tree Service's motion to
12  dismiss, which is Document No. 7.

13          And we had oral argument for about four or
14  five hours, and I took the matter under advisement.

15          I had thought on Wednesday that I was going to be
16  able to give you a ruling that day, but then I managed to get
17  confused by the end of the hearing and needed some more time,
18  but I owe you-all a ruling and so this is going to be it.

19          The Prindle case is before the Court on the second
20  amended complaint.  In it, Ms. Prindle identifies four separate
21  types of communications.

22          Let me interrupt myself and tell you-all that I will
23  ask the court reporter to transcribe this ruling, so don't feel
24  like you have to scribble notes.

25          In her complaint, Ms. Prindle identifies

Cindy Packevicz, RPR, FCRR      904.301.6843

1    four separate types of communications which she asserts

2    violates the Fair Debt Collection Practices Act and the FCCPA,

3    the Florida Consumer Credit Protection Act.

4            One is a September 26, 2011, letter, a notice of

5    intent to foreclosure -- excuse me one moment.  The second are

6    monthly mortgage statements -- attached to the complaint are

7    mortgage statements dated September 5, 2011; October 4, 2011;

8    June 4, 2012; and June 27, 2013.  The third is a July 9, 2013,

9    loan modification package.  And the fourth is a June 13, 2013,

10   delinquent tax notice.

11           With regard to her Fair Debt Collection Practices Act

12   claim, Ms. Prindle asserts that these communications violate

13   the FDCPA, because in paragraph 23, she asserts:  By sending

14   billing letters to plaintiffs and others similarly situated,

15   defendant attempted to collect a debt and represented that it

16   had a legal right to collect upon discharged monetary amounts.

17           This conduct violates 15 USC Section 1692e, which

18   prohibits the use of false, deceptive, or misleading

19   representations in connection with the collection of a debt.

20           And in paragraph 24, Prindle asserts:  In addition,

21   defendants above-mentioned collection activities falsely

22   represented or represent the character, amount, or legal status

23   of a debt, in violation of 15 United States Code, Section

24   1692e(2)(A).

25           Carman is before the Court on her class action

1   complaint, Document No. 1, in which she alleges that Green Tree

2   Servicing violated the FDCPA and the FCCPA by sending monthly

3   account statements after her bankruptcy discharge.

4        Like Ms. Prindle, in paragraph 43, Carman asserts,

5   quote, "by sending account statements to plaintiff and others

6   similarly situated, Green Tree attempted to collect a debt and

7   represented that it had a legal right to collect upon discharge

8   monetary amounts.  Green Tree's conduct violates 15 USC Section

9   1692e, which prohibits the use of false, deceptive, or

10  misleading representations in connection with the collection of

11  a debt.

12       And in paragraph 44, asserts:  In addition, Green

13  Tree's above-mentioned collection activities falsely

14  represented or represent the character, amount, or legal status

15  of a debt, in violation of 15 United States Code, Section

16  1692e(2)(A).

17       Defendants have moved to dismiss Prindle and Carman's

18  claims in their entirety.  And that's in Document No. 71 of

19  Prindle and Document No. 7 of Carman.

20       As indicated, I heard oral argument on these motions

21  which were fully briefed, and the oral argument was on the 23rd

22  of this month, and I will incorporate the transcript of that

23  proceeding into my findings here.

24       Preliminarily, I will note that Green Tree has argued

25  that the Court lacks subject matter jurisdiction to consider

1    Carman's claim.  This contention, as I discussed in detail at

2    the September 23rd hearing, is without merit.  And so for the

3    reasons previously stated, the motion to -- Carman's motion

4    to -- pardon me.  Green Tree's motion to dismiss for lack of

5    subject matter jurisdiction is denied.

6            The Court turns next to Green Tree and Carrington's

7    contention that plaintiffs' claims under the Fair Debt

8    Collection Practices Act are precluded by the Bankruptcy Code.

9            As we all know, the Eleventh Circuit has yet to

10   address whether any FDCPA claim is precluded by the Bankruptcy

11   Code.

12           And the specific question of whether the

13   bankruptcy -- the Bankruptcy Code precludes claims based on

14   post-discharge communications between a debtor in possession of

15   a residence.  And the mortgage holder or servicer of the holder

16   of the mortgage on that residence has been directly addressed

17   in only a few cases.

18           It looks to me like the only cases that really

19   address that specific factual context are the *Marshall* case,

20   the *Walls*, W-a-l-l-s, case, and the *Lovegrove* case.

21           And I left in my office the piece of paper that has

22   the citations for those.  But you-all are very familiar with

23   all three.

24           Hold on one minute.

25           All right.  So looking at those, the *Marshall* case,

1   there's really very little discussion.  It finds the *Randolph*

2   case out of the Seventh Circuit, which deals with the

3   violations of the automatic stay, to be more persuasive than

4   the Walls decision.

5   　　　　And it notes that a claim for violation of a

6   discharge injunction and a claim for violation of the FDCPA

7   based on the same set of facts do not exist in irreconcilable

8   conflict.

9   　　　　But here, I don't -- I'm not understanding

10   plaintiffs' claims to be premised on a violation of the

11   discharge injunction.  Rather, as I understand plaintiffs'

12   claims, they are that even if the Bankruptcy Code permits

13   defendants to seek periodic payments, the manner in which they

14   are doing it in Prindle and Carman*'s* cases violate the FDCPA.

15   　　　　And for purposes of the record -- let's see, the

16   *Marshall* decision is at 491 Bankruptcy 217, Southern District

17   Ohio 212.

18   　　　　The *Walls* decision is *Walls versus Wells Fargo*, 276

19   F.3d 502 Ninth Cir. 2002.

20   　　　　The *Lovegrove* decision is found at 2015 Westlaw

21   5042913.

22   　　　　All right.  So going back to -- because I do not

23   interpret Ms. Prindle's claims as being the same as that which

24   was before the Court in *Marshall*, I don't find the *Marshall*

25   case terribly helpful, because it simply doesn't address the

1   circumstance which I understand to be alleged here, that is,

2   that conduct which may be permissible under the Bankruptcy Code

3   could be found to violate the FDCPA.

4          The *Walls* court, as I think everyone can agree,

5   treats plaintiffs' claims as the equivalent of -- as equating

6   the discharge of the violation, I'm sorry, of the discharge

7   injunction, and says that you can't bypass the remedial scheme

8   by going to the FDCPA.  In other words, the *Walls* court

9   considers any claim that deals with the post-discharge

10  communications as alleging really a violation of the discharge

11  injunction, and was of the view that any such claim would have

12  to go to the bankruptcy court, otherwise it was bypassing the

13  remedial scheme that was intended by Congress.

14         And I'm not at all convinced that it is as simple as

15  that broadbrush approach.

16         The decision from the District Court in West Virginia

17  in *Lovegrove* presents the most thoughtful analysis, and really

18  presents a compelling case for preclusion with regard to this

19  specific type of communication that's at issue in this case.

20         And in saying that, I want to be clear that I am

21  not -- I do not want to be understood as endorsing *Lovegrove* to

22  the extent that it is read as holding, as in *Walls*, that any

23  FDCPA claim arising from the violation of the discharge

24  injunction would be precluded.

25         But with regard to the sending of account statements

Cindy Packevicz, RPR, FCRR      904.301.6843

1   by a lienholder, the *Lovegrove* decision makes some very good

2   arguments about why the FDCPA and the Bankruptcy Code conflict

3   with regard to a claim such as that alleged by Carman and

4   Prindle.

5           First, the *Lovegrove* court notes that the FDCPA gives

6   a private right of action for conduct which the Bankruptcy Code

7   specifically gives no private right of action, but rather

8   instructs that the remedy is contempt in the bankruptcy case to

9   determine first whether the injunction has been violated.

10          Second, the *Lovegrove* court notes that the FDCPA and

11  the Bankruptcy Code conflict with regard to the burden of proof

12  and different scienter requirements, with the requirements as

13  to both of those things under the FDCPA being lower than what

14  the Bankruptcy Code would require, such that an act that would

15  not perhaps rise to a level of a violation of the discharge

16  injunction could be actionable under the FDCPA.

17          Third, *Lovegrove* explains that the Bankruptcy Code

18  permits a creditor, such as defendants, or a lienholder, such

19  as defendants, to send informational statements, but under

20  *Lovegrove*'s reading of the FDCPA, the mere sending of such

21  statements would constitute a false representation that a debt

22  exists because that debt has been discharged.

23          *Lovegrove* also finds conflict based on the

24  mini-*Miranda* requirement of the FDCPA, and the treatment of a

25  lienholder as a creditor under the Bankruptcy Code, but as a

1  debt collector under the FDCPA.

2           And while I find the analysis of the *Lovegrove* court,

3  as I indicated, to be a very thoughtful analysis, and very

4  thorough, the premise of *Lovegrove* is that the mere sending of

5  the periodic statements seeking payment would constitute a

6  false representation that the debt exists, despite the fact

7  that the debt has been discharged, and thus that would violate

8  the FDCPA, regardless of the content of the statement.

9           And that is certainly one way to view the FDCPA's

10  claims in *Lovegrove*, and one way in which the Court could, at

11  least in part, view Prindle and Carman*'s* claim.

12           But Prindle and Carman*'s* FDCPA claims here go further

13  to the extent that they contend that the specific

14  communications attached to and referenced in the complaint use

15  false, deceptive, and misleading representations, and falsely

16  represent the character, amount, or legal status of the debt.

17           And so in ruling on -- on defendant's motions to

18  dismiss, I have to determine the effect or interplay between

19  the Bankruptcy Code and the FDCPA with respect to that specific

20  claim that Prindle and Carman are asserting here today.

21           And the argument -- the first argument that I'm

22  presented with in that regard is the preclusion argument.  And

23  as we discussed in part at the hearing, the -- the question

24  before the Court when two federal statutes address the same

25  subject matter in different ways is whether one implicitly

1    repeals the other.

2           The Supreme Court instructs that courts are not at

3    liberty to pick and choose which congressional enactment they

4    wish to follow.

5           And when two statutes are capable of coexistence, the

6    Supreme Court instructs, quote, "It is the duty of the courts,

7    absent a clearly expressed congressional intention to the

8    contrary, to regard each as effective."

9           And that's in *Morton versus Mancari*, 417 US 535 1974.

10          The court must assiduously attempt to construe

11   two statutes in harmony before concluding that one impliedly

12   repeals the other.

13          And that comes from the Eleventh Circuit, *Ray versus*

14   *Spirit Airlines, Inc.*, 767 F.3d 1220 at 1225, Eleventh Circuit,

15   2014.

16          For these reasons, repeal by implication is not

17   favored, and is to be found only when the intent to repeal is

18   clear and manifest, citing to *Rodriguez versus The United*

19   *States* at 480 US 522 1987.  And the Court may infer a clear and

20   manifest intent from the existence of an irreconcilable

21   conflict.

22          Statutes are in irreconcilable conflict when there is

23   a positive repugnancy between them or they cannot mutually

24   coexist.

25          And with that backdrop, I'm persuaded that the

1    motions to dismiss on the basis that the -- on the basis that
2    the Bankruptcy Code precludes the plaintiffs' FDCPA claims are
3    due to be denied without prejudice.

4         Preliminarily, I note that granting the motions to
5    dismiss on the basis of preclusion at this stage of the
6    proceedings would mean that I would be dismissing the claims
7    with prejudice.  And given the uncertain state of the law, I'm
8    not really sure that that would be appropriate.

9         But more importantly, the more I looked at this, the
10   more I became convinced that based on my understanding of
11   plaintiffs' claims, I should find that -- pardon me -- I should
12   not find that any FDCPA claim arising from the communications
13   at issue to be precluded as a matter of law.

14        I say this because I'm not convinced at this time
15   that the FDCPA and Bankruptcy Code are in irreconcilable
16   conflict with regard to the post-discharge communications that
17   are at issue here.

18        With regard to the FDCPA, to the extent that
19   plaintiffs are claiming, not that any communications from
20   defendant attempting to collect periodic payments from a debtor
21   in possession is improper, but rather that the specific
22   communications identified in their complaints, specifically
23   their content, violates the FDCPA because they are false or
24   misleading, I'm not convinced that permitting such a claim to
25   proceed necessarily conflicts with the Bankruptcy Code or

1    interferes with a congressional goal in establishing the

2    Bankruptcy Code or in limiting the remedies for violation of

3    the discharge injunction.

4            To the extent that the Bankruptcy Code allows a

5    lienholder to seek and accept periodic payments despite a

6    discharge, but the FDCPA would provide a remedy if the

7    lienholder does so by using false, deceptive, or misleading

8    communications, the two statutes can seemingly coexist.

9            A lienholder can assert its right under Section

10   524(j) to seek and accept periodic payments without doing so in

11   a false or misleading manner.

12           In other words, I'm not convinced that this is a

13   situation that a party can comply with its obligation under one

14   statute, the FDCPA, only by giving up its right under the other

15   statute, that is its right to accept periodic payments under

16   the Bankruptcy Code.

17           Additionally, I see nothing in the Bankruptcy Code to

18   suggest that simply because a lienholder has a right to seek

19   and accept periodic payments in lieu of proceeding with

20   foreclosure, that lienholder has carte blanche to do so in any

21   manner it sees fit, including by using false representations

22   such that the lienholder would be immunized from liability for

23   violations of other federal statutes, particularly if the

24   lienholder is engaging in practices that would subject any

25   other debt collector to liability under such statutes.

1          Now, at the end of the day, it may be that Prindle

2     and Carman's claims really do boil down to nothing more than a

3     claim that by sending any statement or request, defendants have

4     violated the FDCPA.  In which case, I will likely find them to

5     be precluded, just as I found in an order I entered earlier

6     today that an FDCPA claim premised on the filing of a proof of

7     claim, an act which a creditor has a right to take in

8     bankruptcy, is precluded by the Bankruptcy Code.

9          But based on the allegations of the complaint and the

10    attached communications which are part of the complaint,

11    plaintiffs' claims go beyond that.  And on these facts, at this

12    stage of the proceeding, I decline to find that plaintiffs'

13    FDCPA claim -- that defendants are making false, deceptive, and

14    misleading representations, including potentially

15    misrepresenting the character, amount, and status of the

16    debt -- are precluded as a matter of law.

17         Defendant's motions on that basis are denied, but

18    that denial is without prejudice to being revisited at summary

19    judgment depending on the factual development of this case.

20         The FCCPA claims present a different question, both

21    because the applicable law is different, and because the

22    alleged violation is alleged differently.  And those

23    differences cause me to reach the opposite conclusion and hold

24    that plaintiffs' FCCPA claims are preempted.

25         In contrast to its consistently strict application of

1    the presumption against finding an implied repeal of one

2    federal statute by another, the Supreme Court has shown a

3    greater willingness to find that federal statutes and

4    regulations preempt state law cause of actions.

5         And I'll cite you-all to *Gade versus the National*

6    *Solid Waste Management Association* case, 505 US 88.

7         The Eleventh Circuit has explained the preemption

8    analysis with regard to state law claims as follows.  I am

9    quoting -- I'm going to quote now from *Cliff versus Payco*

10   *General*, 363 F.3d 1113, at page 1122, Eleventh Circuit, 2004.

11        "Congress's intent to preempt state law may be

12   explicitly stated in the language of a federal statute or

13   implicitly contained in the structure and purpose of the

14   statute.  Bearing in mind the distinction between express and

15   implied preemption, the Supreme Court has identified

16   three types of preemption: express preemption, field

17   preemption, and conflict preemption.

18        "Express preemption occurs when Congress has

19   manifested its intent to preempt state law explicitly in the

20   language of the statute.

21        "If Congress does not explicitly preempt state law,

22   however, preemption still occurs when federal regulation in a

23   legislative field is so pervasive that we can reasonably infer

24   that Congress left no room for the states to supplement it.

25        "This is known as field preemption or occupying the

1    field.  And even if Congress has neither expressly preempted

2    state law nor occupied the field, state law is preempted when

3    it actually conflicts with federal law.

4           "Conflict preemption, as it is commonly known, arises

5    in two circumstances: when it is impossible to comply with both

6    federal and state law, and when state law stands as an obstacle

7    to achieving the objectives of federal law."

8           We're not dealing here with express preemption, nor

9    am I considering field preemption, as there is a presumption

10   against finding implied field preemption in the consumer

11   protection field, which is traditionally regulated by the

12   state, but I do find a case for conflict preemption.

13          The FCCPA, Section 559.72(9) -- 72(9), provides that

14   in collecting consumer debt, no person shall claim, attempt, or

15   threaten to enforce a debt when such person knows that the debt

16   is not legitimate or assert the existence of some other legal

17   right when such person knows that the right does not exist.

18          Citing that statute, plaintiffs, in their FCCPA

19   claims, assert that the defendant, whether it be Green Tree or

20   Carrington, had no legal right to seek collection of any amount

21   from plaintiff.  Well, I should go back a step and say:

22   Plaintiffs assert that the billing letters or statements that

23   were sent to them were an attempt to collect a debt.  That

24   because the debt had been discharged, defendants had no legal

25   right to collect.  And that because defendant had no legal

1  right to seek collection of any amount from plaintiff and

2  others similarly situated, and was, in fact, enjoined from

3  doing so pursuant to the bankruptcy discharges, the attempts to

4  collect debts previously discharged in bankruptcy violated

5  Section 559.72(9), by claiming and attempting to enforce a debt

6  which is not legitimate and not due and owing.

7          So plaintiffs' FCCPA claims are premised on the

8  theory that a mortgage debt, once discharged, is no longer a

9  legitimate debt.  And because of the discharge, defendants had

10 no legal right to seek collection of any amount from

11 plaintiffs.

12         The problem with this claim is that the Bankruptcy

13 Code permits a creditor to send informational statements to a

14 post-discharge debtor when the FCCPA arguably would not.

15         Section 524(j) also explicitly permits a creditor

16 holding a security interest in real property that is the

17 principal residence of the debtor to seek and collect periodic

18 payments associated with a valid security interest in lieu of

19 pursuit of in rem relief to enforce the lien, even though the

20 debt has been discharged.

21         Under plaintiffs' reading of the FCCPA, this act

22 would constitute an attempt to collect on a debt that is not

23 legitimate, because the debt was discharged.

24         So plaintiffs' arguments, to my mind, fail to

25 appreciate that the lien on the residence continues and remains

1  valid after the bankruptcy discharge.  Thus, the communications

2  from a lienholder seeking payment, as long as the debtor

3  continues to reside in the home, is permissible under the

4  Bankruptcy Code.

5       So if the claim under the FCCPA, which plaintiffs

6  here attempt to assert, is found to exist or to be able to

7  proceed, then a creditor would be forced to choose between

8  exercising its right under 524(j), and risking potential

9  liability under the FCCPA, or simply foregoing its right under

10  524(j) in order to shield itself from potential FCCPA

11  liability.

12       That -- that conflict cannot be permitted to exist.

13  To the extent that plaintiffs' claims are based on an idea that

14  any attempt by a lienholder to collect payment on a mortgage

15  debt post-discharge, there exists an irreconcilable conflict

16  between the Bankruptcy Code and the FCCPA, and they cannot

17  mutually coexist.  Any other conclusion would chill the

18  creditor's rights in the bankruptcy process.

19       It would be impossible for a lienholder to comply

20  with its obligation or to comply with the requirements of the

21  FCCPA without being required to give up its rights under

22  Section 524(j) of the Bankruptcy Code to seek and accept

23  periodic payments.

24       I also find that allowing the FCCPA claim, as

25  asserted in these actions, to proceed would stand as an

1   obstacle to achieving the objectives of the Bankruptcy Code.

2   By allowing a lienholder to continue to seek and accept

3   periodic payments, despite the discharge of personal liability

4   on a mortgage note, the Bankruptcy Code strikes a careful

5   balance between the rights of the creditors to protect its

6   collateral, and the debtor.  And provides the debtor who,

7   despite the fault on the mortgage and relief of personal

8   liability, might wish to remain in his or her residence and

9   avoid foreclosure.

10          To allow a state law claim such as that asserted here

11  by plaintiffs would stand as an obstacle to achieving that

12  balance which the Bankruptcy Code seeks to achieve.

13          I am further convinced that a private right of action

14  under state law for money damages based on allegations such as

15  those raised in this action under the FCCPA would conflict with

16  the remedial scheme envisioned by Congress pursuant to Section

17  524 of the Bankruptcy Code.

18          And so for all of those reasons, I am convinced that

19  Prindle and Carman's FCCPA claims, as set forth in the

20  operative complaint, are precluded -- I'm sorry -- are

21  preempted by the Bankruptcy Code and due to be dismissed.

22          And so Count Two of Prindle and Carman's -- Count Two

23  of Prindle's complaint and Count Two of Carman's complaint will

24  be dismissed with prejudice, and the defendant's motions

25  granted to that extent.

```
1            I should note that even if these claims were not
2    precluded, I would likely find that the FCCPA claims were due
3    to be dismissed for failure to state a claim, because the
4    servicer's actions are not an attempt to collect an
5    illegitimate debt.  But we don't have to reach that in this
6    case.
7            The defendants -- or, I'm sorry, at the hearing, the
8    parties agreed that if the FCCPA claims set forth in Count Two
9    of the respective complaints failed, plaintiffs' declaratory
10   judgment claim in each of the complaints -- in Count Three of
11   each of the complaints would be due to be dismissed.
12           And so having dismissed the FCCPA claims, the Court
13   will dismiss the declaratory judgment claims set forth in Count
14   Three of both complaints.
15           That resolves all of the arguments in -- that were
16   raised by Green Tree.  So Green Tree's motion, Document No. 7,
17   is denied without prejudice to the extent that Green Tree seeks
18   dismissal of the FDCPA claim in Count One.  It is denied with
19   respect to the summary judgment argument.  And it is granted to
20   the extent that the FCCPA and declaratory judgment claim are
21   dismissed without -- I'm sorry, with prejudice.
22           And so, Mr. Bustard, that -- that concludes the
23   claims raised in your motion.  And so if you want to drop off,
24   you're free to do so.  You won't hurt my feelings.  I'll leave
25   that up to you.
```

```
 1             MR. BUSTARD:  I think I'll continue to listen, Your
 2   Honor, if you don't mind.
 3             THE COURT:  Okay.  I'll turn now to -- you must be
 4   really bored.
 5             I will turn now to Carrington's 12(b)(6) arguments
 6   with regard to the FDCPA claim.
 7             With regard to the statute of limitations, the motion
 8   is due to be granted in part and denied in part.
 9             It is granted to the extent that suit was filed in
10   September -- September 17 of 2013, and so any actions alleged
11   in the complaint before September 17 of 2012, are barred by the
12   applicable statute of limitations and therefore are due to be
13   dismissed.
14             Defendants -- or Carrington moves to dismiss
15   plaintiffs' complaint, and it's entirely based on the failure
16   to satisfy the conditions precedent to filing suit set forth in
17   the mortgage.
18             On this record, I simply do not see the slightest
19   portion of the mortgage as applying to the FDCPA claim asserted
20   here, as opposed to requiring notice and an opportunity to cure
21   a breach under the terms of the party's agreement.  And so on
22   that basis, the motion is denied.
23             Carrington also moves to dismiss, arguing that the
24   specific communications at issue in Prindle were not made in
25   connection with the collection of a debt, did not falsely
```

1    represent the character or legal status of a debt, or were not

2    debt collection communications that asserted a right Carrington

3    knew did not exist.

4           Section 1692e prohibits debt collectors from using

5    false, deceptive, or misleading representations in connection

6    with the collection of any debt.

7           And for the FDCPA to apply, the communication that

8    forms the basis of the suit must have been made, quote, in

9    connection with the collection of any debt.

10          The Eleventh Circuit employs the least-sophisticated

11   consumer standard to evaluate whether a debt collector's

12   communications violate Section 1692e of the FDCPA, and that, of

13   course, comes from the *LeBlanc* decision at 601 F.3d 1185, 1193,

14   11 Cir. 2010.

15          The purpose of applying this standard is, quote, "To

16   ensure that the FDCPA protects all consumers, the gullible as

17   well as the shrewd," close quote.  And further, the -- in

18   applying the least-sophisticated consumer standard, the

19   least-sophisticated consumer is presumed to possess a

20   rudimentary amount of information about the world and a

21   willingness to read a collection notice with some care.

22          But the test is an objective one in order to protect

23   naive consumers, but prevent liability for bizarre

24   idiosyncratic interpretations of collection notices.

25          And, again, that comes from the *LeBlanc* decision.

1          So there's no bright-line rule for determining

2     whether a communication is made in connection with the

3     collection of a debt.

4          In *LeBlanc*, the Eleventh Circuit cited a Second

5     Circuit decision, *Clomon*, C-l-o-m-o-n, 998 F.2d 1314 at 1319,

6     saying the types of categories of collection notices include

7     generally, one, notices that contain language that overshadows

8     or contradicts other language that informs consumers of their

9     rights; two, notices that mislead by employing formats or

10    typefaces which tend to obscure important information that

11    appears in the notice; and, three, notices that deceive by

12    being open to more than one reasonable interpretation, at least

13    one of which is inaccurate.

14         The relationship of the parties, the intent of the

15    communication, as well as whether there is a demand for payment

16    are all factors to consider when determining whether a

17    communication falls within the scope of the FDCPA.

18         For a -- in determining whether such a communication

19    falls within the scope of the FDCPA, the Eleventh Circuit has

20    said that an animating purpose of the communication must be to

21    induce payment by the debtor.  And that's also in the *LeBlanc*

22    decision.

23         So obviously communications that expressly demand

24    payment will almost certainly have that purpose, but an

25    explicit demand for payment is not necessary.

1          Communications that include discussions such as the

2    status of payment, offers of alternatives to default, and

3    requests for financial information may be part of a dialogue

4    that facilitates the satisfaction of a debt.

5          On the opposite extreme or end of the spectrum where

6    a communication is merely informational and specifically

7    informs the debtor that the communication or notice is not an

8    attempt to collect the debt or to demand payment, courts have

9    held that the communications are not subject to the FDCPA.

10          Consistent with the Eleventh Circuit precedent, the

11    Court now views the communications sent to Ms. Prindle through

12    the lens of the least-sophisticated consumer, and because the

13    matter is before the Court on Carrington's motion to dismiss,

14    the Court draws all reasonable inferences in favor of Prindle.

15          And I'll go through the four types of communications.

16          I don't need to address the September 26, 2011,

17    notice of intent to foreclose because that is barred by the

18    statute of limitations.

19          I previously addressed the delinquent tech notices.

20    And for the reasons stated on the record, I do not find them to

21    be communications in connection with the collection of a debt,

22    and I won't repeat those reasons here.  As I indicated earlier,

23    I've incorporated the transcript of that proceeding, and I

24    indicated that that would be my finding as to that claim

25    previously.

1          Further, I find, as a matter of law, that nothing in

2     the tax notices is false or misleading, and nothing about the

3     tax -- delinquent tax notices mischaracterizes the character,

4     amount, or legal status of any debt.

5          And so Prindle's claims based on the mailing by

6     Carrington of -- or of Carrington's contractor of delinquent

7     tax notices fails to state a claim upon which relief can be

8     granted and are due to be dismissed.

9          Turning to the mortgage statements.  Carrington

10    argues that the mortgage statements were not an attempt to

11    collect, and that they were merely informational.

12         In resolving this claim, I looked only at the

13    June 23, 2013, mortgage statement.  It differs from the earlier

14    mortgage statement, but the earlier mortgage statements are all

15    outside the statute of limitations.  So I'm looking at the

16    June 23, 2000 -- I'm sorry, 2013, mortgage statement.  And I

17    note that on its face, it looks like any other mortgage

18    statement seeking a payment that an individual would receive

19    regardless of whether they were in default or not in default,

20    or whether they were discharged or not discharged.

21         It states the amount of the debt; it sets a due date

22    for payment of the debt; it gives a current payment amount.  It

23    also gives an overall past-due balance, suggesting that that

24    balance is still due and owing.

25         That whole past-due balance, not just a periodic

1  payment.  It instructs how Prindle can make a payment.  It

2  instructs how Prindle can set up automatic payments to, quote,

3  give her peace of mind of knowing that her monthly payments are

4  taken care of.  And it attaches a detachable payment coupon.

5           Now, I don't know exactly what the payment coupon

6  says, but above the payment coupon, it reads:  Do not send

7  entire statements with your payment, suggesting that they're

8  expecting a payment back in response to that communication.

9           Now, the back of the mortgage statement gives

10  disclaimers.  But these disclaimers are boilerplate disclaimers

11  that can be viewed as either inconsistent or at least

12  confusing, particularly in light of the amount due on the first

13  page, and can leave a consumer guessing as to whether or not

14  they owe the debt.

15           I'm -- in looking at these -- in looking at these

16  statements, I simply cannot find, as a matter of law, that

17  given the overall tenor of the communications, those

18  disclaimers are sufficient to overcome the impression that a

19  payment is due, certainly not viewing the communications from

20  the lens of the least-sophisticated consumer and in the light

21  most favorable to the plaintiff.

22           Indeed, viewing them in -- the communications in the

23  light most favorable to the plaintiff, it does appear to be a

24  communication in connection with the collection of a debt, and

25  not merely informative.

1          And I'll note just as -- just as an aside, that

2     defendant's position with regard to the mortgage statements is

3     somewhat contradictory.  Because on the one hand, defendant

4     contends that the statements are not an attempt to collect a

5     debt.  But on the other hand, defendant asserts that it has a

6     right to send these very statements because it has a right to

7     collect payment under 524(j).  And that when they are

8     collecting payments under 524(j), they are required to present

9     all of this information, which is what makes the statements

10    look like collection activity or look like they're demanding a

11    payment.

12          And so those positions I have difficulty squaring.

13          But regardless, for the reasons that I already

14    stated, the motion to dismiss with regard to the mortgage

15    statements, to the extent that it is based on a failure to

16    state a claim under the FDCPA, is due to be denied.

17          I got out of order in reading my notes here.

18          With regard to the last argument that I touched on, I

19    intended to point out that if the mortgage statements are

20    viewed as defendant's effort to collect periodic payments and

21    therefore that's why all that information has to be included, I

22    can't imagine how they could at the same time not be

23    communications made in connection with the collection of a

24    debt.

25          Defendants also contend that the mortgage statements

1    are permitted to be sent under 524(j), and that that would

2    prevent the plaintiffs' claim.

3         But to the extent that the defendant is arguing that

4    it is entitled to send these payments, and to the extent that

5    the argument is that, by definition, that means the FDCPA claim

6    can't proceed, I wouldn't be able to make that determination

7    based on the allegations of the plaintiffs' complaint.

8         Because while the plaintiffs' complaint does plead

9    that there's a security interest, and it does plead that the

10   debtor is -- continues to be in possession of the residence,

11   there is nothing in plaintiffs' complaint from which the Court

12   could determine whether these statements are actually made in

13   the usual and ordinary course of the relationship between the

14   debtor and the creditor.

15        And so I -- looking only at the four corners of the

16   complaint, even if 524(j) would in and of itself be a defense,

17   that's beyond the four corners of the complaint and the Court

18   could not consider it.  And so that argument is rejected at

19   this stage of the proceedings.

20        Last, the Court turns to the loan modification

21   package sent on July 19, 2013.

22        Carrington argues that there is nothing deceptive

23   about that loan modification offer.  Prindle contends that the

24   Court must not view the loan modification package in isolation,

25   but, rather, must consider it in the context of the overall

1  relationship between Prindle and Carrington, and also

2  Carrington's intentions.

3         And as I previously stated, it is true that in

4  determining whether a communication falls within the scope of

5  the FDCPA, the Court should consider the relationship of the

6  parties, the intent of the communication -- and the intent of

7  the communication.

8         And so while I am more skeptical about the viability

9  of the FDCPA claim on the basis of the loan modification

10 package, I don't find that it is due to be dismissed with

11 prejudice at the motion to dismiss stage of the proceedings.

12        And so Carrington's motion, which is Document No. 71,

13 is denied as to Carrington's contention that the FDCPA claim

14 presented in this particular case is precluded by the

15 Bankruptcy Code.  And that -- that is denied without prejudice.

16        However, the motion is granted with regard to the

17 FDCPA claims in Count One as to any communication occurring

18 before September 17, 2012, and as to any claim based on

19 delinquent tax notices.  Those claims are dismissed with

20 prejudice and otherwise Carrington's motion is denied.

21        Carrington's motion is granted as to plaintiffs'

22 FCCPA claim as set forth in Count Two, and as to the

23 declaratory judgment claim in Count Three, and those claims are

24 dismissed with prejudice.

25        Mr. -- I guess it's a good thing you stayed on the

line, Mr. Bustard, because it occurs to me that I need to ask

you, did I fail to rule on any of the arguments you asserted,

sir?

MR. BUSTARD:  No, you did not, Your Honor.

THE COURT:  Mr. Silverman, did I fail to rule on any

of the arguments you asserted?

Mr. Silverman, are you still with me or am I on mute

or are you on mute?

MR. SILVERMAN:  I'm sorry.  You were on speaker,

which didn't work.  You've adjudicated everything on the motion

to dismiss.

At the motion to dismiss hearing, we had discussed

whether you were going to include 1292b language as part of the

order, and we didn't really address whether we would apply

separately for that or whether that would apply to either my

motion to dismiss denial or plaintiffs' motion to dismiss --

plaintiffs' dismissal of the FDCPA claim, whether you wanted

those to be the subject of the 1292b certification.

THE COURT:  I'm not going to do that sua sponte.  If

you-all want to file -- if you-all want to file motions asking

me to certify it, I'll certainly consider those motions, but

I'm not going to do it sua sponte.  I'll have to hear from

you-all on that.

MR. SILVERMAN:  Okay.  It was just a logistics

question of whether --

```
1            THE COURT:  Sure.  Sure.  And also in terms of
2   logistics, based upon my ruling here today, I am going to deny
3   the -- the pending motion for class certification without
4   prejudice, because I think that now that the issues are
5   narrowed, we can have a motion that I might more easily
6   adjudicate.
7            I can tell you that I had a great deal of difficulty
8   determining what -- what plaintiffs were going to be part of
9   what claim, and, frankly, had difficulty determining the size
10  of the class, the numerosity question.  I mean, I guess there
11  maybe is numerosity, but I couldn't tell.
12           And so I think now that the claims are narrowed, we
13  can have the benefit of what would be a more streamlined
14  analysis.
15           Now, I was prepared to go ahead and give you a
16  deadline to file that renewed motion, but maybe what I should
17  do instead is just direct defendants to file an answer to the
18  complaint and give you a deadline for filing an answer, and
19  ask -- and direct you-all to confer and provide the Court with
20  an agreeable schedule to go forward, given where we are at this
21  time.  And that would also let you-all talk about whether
22  you're going to try and do the 1292.
23           How would that sound?
24           MR. SILVERMAN:  Yes, Your Honor.
25           THE COURT:  Sorry, I'll ask Ms. Varnell.
```

1    Ms. Varnell, is that acceptable to you?

2              MS. VARNELL:  Yeah, absolutely.  I believe it's best

3    if we can work it out and submit something to the Court that

4    works for everyone.

5              THE COURT:  Okay.  And, Mr. Silverman, does that work

6    for you?

7              MR. SILVERMAN:  Yes.  We agree, Your Honor.

8              THE COURT:  Okay.  And I don't -- I don't recall the

9    status of -- is there a -- the Carman case also has class

10   allegations.

11             I don't -- I don't recall if there's a pending motion

12   on that, off the top of my head.

13             MS. VARNELL:  Your Honor, you may recall that when we

14   had our first telephonic hearing prior to the motion to

15   dismiss, I informed the Court that we intended to file an

16   amended complaint.

17             And you said:  Just hold off.  Let's have this motion

18   to dismiss, and I'll extend deadlines as is necessary once we

19   get through this motion to dismiss and see what's left.

20             And so I would ask for the same situation, if

21   Mr. Bustard is agreeable to that, that, you know, he and I just

22   reasonably work through what deadlines make sense and then

23   submit that to the Court, you know, how we think we could best

24   move forward, in a diligent way.

25             I'm as eager as anyone to try and get some

1   resolution, but I'd like to do it that way if that works,

2   Mr. Bustard.

3            MR. BUSTARD:  That's fine by me, Your Honor.

4            THE COURT:  Okay.  All right.  So today is the, what?

5   The 25th of September.  How about if I direct the defendants to

6   respond to the complaint by October 23rd?

7            And the parties by October -- pardon?

8            MR. BUSTARD:  I'm sorry, Your Honor.  I think

9   plaintiff in the Carman case is going to be filing a motion for

10  leave to amend the complaint, so I don't know if an answer

11  would be appropriate now if that's her intention.

12           THE COURT:  Oh, sorry.  You're actually --

13           MS. VARNELL:  That's correct, Your Honor.  However, I

14  can get my motion to amend and the suggested amended complaint

15  together in one week.

16           THE COURT:  Well, in the amended complaint, are you

17  adding claims?

18           MS. VARNELL:  We're simply going to add additional

19  communications, Your Honor.

20           THE COURT:  All right.  I'll direct you-all to confer

21  and maybe you-all can agree on that so that it can be an agreed

22  motion.

23           All right.  So in the Prindle -- thank you for

24  clarifying that, Mr. Bustard.

25           So in the Prindle case, I'm going to direct

Cindy Packevicz, RPR, FCRR      904.301.6843

1    Carrington to file an answer by October 23rd.

2           In the Carman case, I will direct plaintiff to confer

3    with opposing counsel, and if it is her intention to seek leave

4    to file an amended complaint, to do so no later than

5    October 23rd.

6           I will further direct in both cases for plaintiff and

7    defendant to confer with one another and to file a notice with

8    the Court proposing a schedule for the remaining matters in

9    this case no later than October 30th.

10          All right.  Ms. Varnell, anything else in either

11   case, ma'am?

12          MS. VARNELL:  Not at all.  I appreciate this Court's

13   difficult job.  Thank you very much.

14          I'm sorry for giving you the headache.

15          That's my way of apologizing for giving you a

16   week-long headache.

17          THE COURT:  All right.  Mr. Silverman, anything

18   further on behalf of Carrington Mortgage Services?

19          MR. SILVERMAN:  No, Your Honor.

20          THE COURT:  And, Mr. Bustard, anything further on

21   behalf of Green Tree?

22          MR. BUSTARD:  No, Your Honor.

23          THE COURT:  I want to commend you-all for giving me

24   very good briefing and good argument on what is a complicated

25   matter.

1          It could have been -- as painful as it was, it could

2     have been a lot worse if I had had a different set of lawyers.

3     And so your collegiality and your professionalism and your

4     efforts are very much appreciated.

5          MR. BUSTARD:  Thank you, Your Honor.

6          THE COURT:  Have a good weekend and we are in recess.

7          MR. SILVERMAN:  Thank you, Your Honor.

8          MS. VARNELL:  Bye.

9      (Proceedings concluded at 5:05 p.m.)

10                         -   -   -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA  )

     I hereby certify that the foregoing transcript is a true and correct computer-aided transcription of my stenotype notes taken at the time and place indicated herein.


     Dated this 22nd day of October 2015.




                         /s/Cindy L. Packevicz
                         Cindy L. Packevicz, RPR, FCRR