**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TWYLA PRINDLE, individually and
on behalf of a class of persons
similarly situated,

                    Plaintiff,

v.                                                    Case No. 3:13-cv-1349-J-34PDB

CARRINGTON MORTGAGE SERVICES, LLC,

                    Defendant.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiff's Second Renewed Motion for Class

Certification and Incorporated Memorandum of Law (Doc. 107; "Motion"), filed on

December 21, 2015. On January 19, 2016, Defendant, Carrington Mortgage Services,

LLC ("Carrington"), filed Carrington's Opposition to Plaintiff's Second Renewed Motion

for Class Certification (Doc. 110; "Response"). With leave of Court, on February 22, 2016,

Plaintiff, Twyla Prindle, filed Plaintiff's Reply in Support of Second Renewed Motion for

Class Certification (Doc. 115; "Reply"). Accordingly, this matter is ripe for review.

## I.    Background[1]

Prindle filed this lawsuit in state court on September 17, 2013, see Complaint and

Demand for Jury Trial (Doc. 2; Complaint) at 1, and Carrington removed it to this Court

on November 4, 2013, see Carrington Mortgage Services, LLC's Notice of Removal (Doc.

---

[1] Because the Court previously discussed the facts and procedural history of this case in its Order on Summary Judgment (Doc. 133 at 1–10), the Court will incorporate that more detailed discussion into this Order and present only limited relevant background here.

1; Notice of Removal). With leave of Court, Prindle filed her Second Amended Complaint on September 16, 2014. See Revised Second Amended Complaint (Doc. 58; Second Amended Complaint). She raised claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"), the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55–559.785 ("FCCPA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201, based on her receipt of several communications from Carrington. See id. ¶¶ 5–63. On September 25, 2015, the Court dismissed Prindle's FCCPA and declaratory judgment claims and her FDCPA claims based on several of the alleged communications, leaving only her FDCPA claims based on receipt of a mortgage statement dated June 27, 2013, (the "June 2013 Statement") and a loan modification package dated July 19, 2013 (the "Loan Modification Package"). See Transcript of Motion Hearing dated September 25, 2015 (Doc. 99; "Tr. of 9/25 Hearing") at 20–21, 25–26, 28–30.

Prindle then filed the instant Motion on December 21, 2015, seeking class certification with respect to her remaining claims, see Motion, and Carrington moved for summary judgment on those claims on February 12, 2016, see Carrington's Motion for Summary Final Judgment (Doc. 113; "Summary Judgment Motion"). The Court heard oral argument on the Motion and Carrington's Summary Judgment Motion on May 9, 2016. See Transcript of Motion Hearing dated May 9, 2016 (Doc. 125; "Tr. of May 2016 Hearing"). On August 16, 2016, the Court granted Carrington's Summary Judgment Motion to the extent Carrington sought summary judgment in its favor as to Prindle's claim for actual damages and her FDCPA claim based on receipt of the Loan Modification Package, leaving only Prindle's FDCPA claim based on receipt of the June 2013

Statement and any other similar mortgage statements she received within the applicable limitations period. See Order on Summary Judgment (Doc. 133; "Summary Judgment Order") at 39–40. Accordingly, the Court now considers Prindle's Motion and must determine whether class certification is appropriate with respect to her claim based on receipt of the June 2013 Statement and other materially similar mortgage statements.

## II.   Discussion

### A.   Applicable Law

Pursuant to Rule 23(a), Federal Rules of Civil Procedure (Rule(s)), class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187-88 (11th Cir. 2003); Rule 23(a)(1)–(4). These four requirements "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." Piazza v. Ebsco Inds., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982)). The party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b). See Valley Drug, 350 F.3d at 1188. "Failure to establish any one of these four factors and at

least one of the alternative requirements of Rule 23(b) precludes class certification." <u>Id.</u>

Specific to this case, Prindle seeks certification under Rule 23(b)(3),[2] which states:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> …
>
> (3)    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

**B.    Analysis**

**1.    Numerosity**

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors. <u>Phillips v. Joint Legis. Comm.</u>, 637 F.2d 1014, 1022 (5th Cir. 1981). "[T]he focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" <u>Bacon v. Stiefel Lab., Inc.</u>, 275 F.R.D. 681, 690 (S.D. Fla. 2011) (quoting <u>Armstead v. Pingree</u>, 629 F. Supp. 273, 279 (M.D. Fla. 1986)); <u>Leszczynski v. Allianz Ins.</u>, 176 F.R.D. 659, 669

---

[2] The Second Amended Complaint, at ¶ 69, states that Prindle also seeks certification under Rule 23(b)(2). Because she does not address Rule 23(b)(2) in the Motion and has provided no argument on that issue, the Court considers it abandoned.

(S.D. Fla. 1997) (The numerosity requirement "does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient."). Factors to be considered are the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. Id. "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). Instead, a plaintiff is required to "show some evidence of or reasonably estimate the number of class members" beyond "[m]ere speculation, bare allegations, and unsupported conclusions." Barlow v. Marion Cnty. Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009). "In general terms, the Eleventh Circuit has found that 'less than twenty-one [prospective class members] is inadequate [while] more than forty [is] adequate.'" See Bacon, 275 F.R.D. at 690 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)); see also Vega, 564 F.3d at 1267 (noting that the court has affirmed certification of a class of "'at least thirty-one individual class members'" and has also affirmed a district court's finding that a class of 34 did not satisfy the numerosity requirement). "[W]here the question of numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." Leszczynski, 176 F.R.D. at 670 (citing Evans, 696 F.2d at 930).

Prindle contends that the numerosity requirement is met, pointing to the chart Carrington supplied. That chart shows either 586 or 587 accounts[3] that Carrington serviced which (1) are associated with property in Florida and (2) show that at least one borrower on the account filed a Chapter 7 bankruptcy petition and received a discharge. See Motion at 5. She cites testimony from Carrington's corporate representatives that mortgage statements were generated and sent automatically. Id. Although Carrington initially contested numerosity on several grounds, see Response at 10–12, Carrington's counsel subsequently conceded that the class, if limited to individuals "getting the statements," would include somewhere between 40 and 125 individuals, see Doc. 125 ("Tr. of May 2016 Hearing") at 24–25, 88. Based on that concession, the Court finds that Prindle has demonstrated that the proposed class is so numerous that joinder of all members would be impracticable.

### 2.    Commonality

The commonality requirement demands that there be questions of law or fact common to the class. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). In this way, "commonality" "measures the extent to which all members of a putative class have similar claims." Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006). Commonality exists if a class action involves "issues that are susceptible to class wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). The requirement is satisfied "where plaintiffs allege common or standardized conduct by the defendant directed toward

---

[3] In her Motion, Prindle asserts that the chart contains 586 accounts. See Motion at 5. However, in her Reply, she asserts that it contains 587 accounts. See Reply at 5–6. Which total is accurate is irrelevant.

members of the proposed class." Elkins v. Equitable Life Ins. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, *11 (M.D. Fla. Jan. 27, 1998). As such, the putative class plaintiffs' claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 349–50. Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Id. (citation omitted); see also Dukes, 564 U.S. at 353 (quoting Falcon, 457 U.S. at 157–58).

Prindle argues that there are several questions common to all class members, including (1) "[w]hether the communications identified in the operative complaint were an attempt to collect a debt"; (2) "[w]hether, given the relationship of the parties, Defendant's communications violated the FDCPA"; and (3) "[w]hether the disclaimer language used in certain debt collection communications cured any debt collection attempt or, rather, if the disclaimers were likely to confuse or mislead the least sophisticated consumer." Motion at 6–7. In its Response, Carrington asserts that there are no common issues because "mini trials" will be necessary as to each class member to determine whether the account was in default; whether the communications were made in connection with the collection of a debt; and whether the communications were false, deceptive, or misleading from the perspective of the least-sophisticated consumer.[4] Response at 13–14.

---

[4] Carrington discusses commonality and predominance together. See Response at 12. However, commonality represents a relatively light burden to meet, whereas the predominance inquiry is "far more demanding." See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268, 1270 (11th Cir. 2009). Indeed, even one common question can satisfy the commonality requirement. See Dukes, 564 U.S. at 359. Carrington appears to assert primarily that there is no common question suitable for class adjudication, so common questions necessarily cannot predominate over individualized issues. In this section, the Court addresses only whether the issues Prindle identifies present common questions. The Court will address whether other

Carrington also asserts that the Court must consider several factors in resolving those issues, and it points out that Prindle also argued that such factors are important for the Court's consideration. Id. at 14–15. It also lists several additional factors it contends are relevant in determining whether a communication was a debt-collection attempt and whether it violated the FDCPA. Id. at 15. Next, Carrington suggests that some of the communications might have been sent to debtors' attorneys during bankruptcy, in which case a different standard might apply. Id. Carrington asserts that Prindle's own circumstances demonstrate the individualized nature of the issues in this case. Id. at 17–18. In her Reply, Prindle reiterates that the legality of the form communications presents a common issue. Reply at 7. She argues that the litany of individualized issues Carrington cites are mere speculation or are otherwise irrelevant to the FDCPA claims. Id. at 9–11. She also contends that, to the extent any communications might have been sent to class members' bankruptcy counsel, the Eleventh Circuit has not addressed whether a different standard would apply in those circumstances. Id. at 11–12.

In this case, the question of whether a mortgage statement was sent in connection with the collection of a debt presents a common question. As the Court previously concluded in its Summary Judgment Order, there is a genuine dispute as to whether the June 2013 Statement constituted a communication made in connection with the collection of a debt because the front of the statement appeared to demand payment, while the back contained disclaimers purportedly indicating that the statement was informational only. See Summary Judgment Order at 36–37. Moreover, Prindle has presented evidence

---

individualized issues predominate over any common questions in a subsequent section devoted to the predominance requirement. See infra at 15–17.

that Carrington sent such mortgage statements to debtors automatically. See Madden Depo. at 7, 24–25; Doc. 107-3 (deposition of Steven Brackett; "Brackett Depo.") at 54–55. As such, a reasonable jury could conclude that Carrington had the same animating purpose—attempting to collect payments—in sending all mortgage statements. In light of that evidence, Prindle has sufficiently demonstrated the possibility that one purpose of the mortgage statements was to induce payment. Thus, even if a borrower requested one or more mortgage statements, and irrespective of the nature of the parties' relationship, the statement could still constitute an attempt to collect a debt. Cf. Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1217–18 (11th Cir. 2012) (communication sent to borrower may have more than one purpose).

As to the second purportedly common question, because the least-sophisticated-consumer standard is objective, and Carrington conceded at oral argument on May 9, 2016, that that standard does not take into account the individual circumstances of a plaintiff, see Tr. of May 2016 Hearing at 69–70, the Court must examine only the mortgage statement in determining whether it violated the FDCPA. As such, whether the mortgage statement would be false, deceptive, or misleading from the perspective of the least-sophisticated consumer presents a common question because it may be decided "in one stroke" based on the language of the statement itself.[5]

Carrington asserts that those core issues do not present common questions because a fact finder would need to consider several individualized factors, such as (1) whether the debtor surrendered the property during bankruptcy; (2) whether the debtor

---

[5] Prindle's third suggested common question—whether the disclaimers on the mortgage statement insulated Carrington from FDCPA liability—is encompassed within the second common question she identifies because, to determine whether the mortgage statement violated the FDCPA, the fact finder necessarily would have to determine the effect of the disclaimers.

was provided and rejected a reaffirmation agreement; (3) whether the debtor continued to reside in the property; (4) whether the debtor requested periodic statements; (5) whether the debtor expressed an interest to Carrington in avoiding foreclosure; (6) whether an account was in default, current, or merely outstanding at the time bankruptcy was filed; and (7) whether the debtor was brought current or "reinstated" post-discharge.[6] Response at 14–15. Carrington failed to explain why those factors are relevant, and the Court does not see them as particularly relevant.[7]

Carrington also argues that, to the extent any of the communications were sent to a person's bankruptcy counsel, a different standard might apply. It cites Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291 (11th Cir. 2015), to support that assertion. In Miljkovic, the Eleventh Circuit observed that the defendants "reasonably suggest[ed] that the 'least sophisticated consumer' standard is inappropriate for evaluating the tendency of conduct or language to deceive or mislead a consumer's attorney." Id. at 1306 n.10. Nevertheless, it declined to decide whether a different standard should apply because the plaintiff could not even make the minimal showing under the usual standard. Id.[8]

---

[6] Carrington also lists as additional considerations whether the debtor requested a loan modification and whether Carrington was required to offer a loan modification. Response at 15. However, those considerations relate to evaluation of the Loan Modification Package claim, which is no longer before the Court.

[7] With respect to the first three and the fifth proposed factors, they may well relate to the question of whether Carrington was permitted under the Bankruptcy Code to send periodic statements at all, but would not be relevant to the FDCPA claim before the Court—that the statements Carrington chose to send were false, deceptive, or misleading. Next, whether a debtor requested mortgage statements is an issue the Court has determined not to be dispositive. Finally, the last two issues identified, whether an account was in default at the time bankruptcy was filed or whether a debtor brought the account current post-discharge, are entirely irrelevant. What matters with respect to default is only whether the loan was in default at the time Carrington acquired the servicing rights.

[8] The Eleventh Circuit recently took up the question in Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268 (11th Cir. 2016). There, the court declined to adopt a "competent lawyer" standard under the facts presented, where the plaintiff alleged that the communication violated the FDCPA because it failed to inform the consumer that she must dispute her debt "in writing," as required under § 1692g(b). Id. at 1274–77. The court distinguished Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 774–75 (7th Cir. 2007), and Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 953–54 (10th Cir. 1996), both of which applied

The Court need not decide in the context of this case whether a different standard should apply to statements sent to lawyers. Prindle does not allege any claim based on her lawyer's receipt of mortgage statements, so she cannot represent a class including individuals who received statements only through their lawyers. As such, the class definition will be limited to those individuals who, like Prindle, themselves received mortgage statements similar to the June 2013 Statement. See Dukes, 564 U.S. at 348–49 (a class representative must "possess the same interest and suffer the same injury as the class members").[9]

Prindle has presented at least two common questions. Thus, she has satisfied the requirement of commonality. See Dukes, 564 U.S. at 359 (stating that even one common question can satisfy the commonality requirement).

### 3.    Typicality

The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000). While commonality is concerned with group characteristics of a class as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class." See id. at 1279. Typicality is

---

the "competent lawyer" standard in different circumstances. The court in Bishop explained that Evory and Dikeman both "took pains to distinguish between behavior that is less likely to mislead an attorney—such as tacit or non-verbal disclosure—and cases involving falsity and misrepresentation." Bishop, 817 F.3d at 1276. Because the court found the omission of the "in writing" requirement misstated the law and was not apparent on the face of the letter, it declined to adopt the competent-lawyer standard in those circumstances. Id.

[9] Moreover, for the reasons discussed infra at 20–23, the Court determines that the proposed class must be limited to those persons who themselves received a mortgage statement materially similar to the June 2013 Statement.

satisfied if the claims of the named plaintiffs and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." Mesa v. Ag-Mart Produce, Inc., No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224, at *6 (M.D. Fla. July 18, 2008). The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests. Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 698 (S.D. Fla. 2004). "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class." Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 604–05 (S.D. Fla. 2003) (quoting Kornberg, 741 F.2d at 1337).

Prindle argues that each class member's claim involves allegations identical to hers, and Carrington's potential defenses to each claim are identical. Motion at 8–10. She points to Carrington's corporate representative's testimony that there was nothing atypical about the way Carrington handled Prindle's account. Id. at 10. Carrington contends that Prindle is atypical because "[h]er actions, and Carrington's response to those actions, are not common for all borrowers and may result in her exclusion from the class." Response at 19–20. In her Reply, Prindle asserts that her claims are typical of the class because whether she had previously expressed an intent to reaffirm the debt is irrelevant, and her other communications with Carrington do not necessarily prevent liability based on the mortgage statement. Reply at 12–13.

Upon consideration of the parties' positions, the Court determines that Prindle's claims are typical of the proposed class. Analysis of this issue is largely the same as for the commonality requirement.[10] As previously discussed, the core issues in this case—whether the mortgage statement was sent in connection with the collection of a debt and whether the statement would have been false, deceptive, or misleading from the perspective of the least-sophisticated consumer—present common questions. Prindle received the June 2013 Statement after her mortgage debt was discharged. Her FDCPA claim based on that Statement is typical of all other putative class members who received a mortgage statement in substantially the same form after receiving a discharge.

### 4.    Adequacy of Representation

The fourth prerequisite to class certification set forth in Rule 23(a) requires "that the representative party in a class action must adequately protect the interests of those he purports to represent." Valley Drug Co., 350 F.3d at 1189; Rule 23(a)(4) (internal quotation omitted); see also Piazza, 273 F.3d at 1346 ("'adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel"). The purpose of the "adequacy of representation" requirement is "to protect the legal rights of absent class members" who will be bound by the res judicata effect of a judgment. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987). As such, the requirement applies to both the named plaintiffs and to their counsel. London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).

---

[10] Indeed, the Supreme Court has recognized that the commonality and typicality requirements of Rule 23 "tend to merge." Dukes, 564 U.S. at 349 n.5.

The "'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" Valley Drug Co., 350 F.3d at 1189 (citation omitted). Class certification is inappropriate where some class members benefit from the same acts alleged to be harmful by other members of the class, creating a conflict of interest. Valley Drug Co., 350 F.3d at 1189. However, "the existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in the controversy." Id.

Prindle asserts that her counsel are approved to represent classes certified in several state and federal courts, including other cases in this District. She also asserts that she has no conflict of interest. Motion at 10–11. Carrington does not challenge Prindle's ability to diligently prosecute the action, does not argue that she has any significant conflicts of interest with the putative class members, and does not challenge her counsel's qualifications, experience, or competence. See generally Response. The Court sees nothing suggesting that either Prindle or her counsel could not adequately represent the class.

### 5.   Rule 23(b)(3)

"A class action may be maintained if Rule 23(a) is satisfied" and the action falls within one of three types of class actions recognized in Rule 23(b). See Rule 23(b). Plaintiff seeks class certification pursuant to Rule 23(b)(3). See Motion at 11. A Rule 23(b)(3) class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

-14-

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).

### a.  Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1357 (11th Cir. 2009). An inquiry into the predominance of common questions of law or fact "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "[I]n determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account the claims, defenses, relevant facts, and applicable substantive law." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004), abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)). Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 579 (M.D. Fla. 2006). On the other hand, "common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of legal and factual issues.'" Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 789 (11th Cir. 2014) (quoting Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1023 (11th Cir. 1996)).

As previously discussed, the core issues in this case—whether the June 2013 Statement was a communication made in connection with the collection of a debt and

whether it would have been false, deceptive, or misleading from the perspective of the least-sophisticated consumer—present common questions. Carrington argues that "mini trials" would be necessary to determine whether each account was in default at the time Carrington acquired it. Response at 13–14. In her Reply, Prindle asserts that whether the accounts of the proposed class members were in default "is capable of systematic determination once the Court rules on the common legal issue of what constitutes a default." Reply at 9.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, that definition excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). "Thus, a person who otherwise meets the definition of 'debt collector' may be excluded from the term if he obtained a debt from another, he is collecting the debt for another, and the debt was acquired prior to default." Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1314 (11th Cir. 2015) (emphasis omitted).

Carrington asserts that determining which potential class members' accounts were in default at the time Carrington obtained them would require a highly individualized, "case-by-case" inquiry. Response at 14. The record suggests otherwise. Although not cited by Prindle, Carrington's corporate representative testified that Carrington would be able to generate from its system a report indicating which loans were "acquired while …

in default." Brackett Depo. at 49–50. Based on that testimony, the Court is satisfied that determination of whether a particular account was in default at the time Carrington obtained it would not require a significant individualized inquiry and so would not overwhelm the common questions at the core of this case. As such, common questions predominate.[11]

### b.    Superiority

Turning to the superiority requirement of Rule 23(b)(3), the Court considers "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269. Rule 23(b)(3) contains a list of factors to consider when making a determination of superiority:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Rule 23(b)(3).

---

[11] As previously discussed, Carrington suggests that it might have sent some mortgage statements to attorneys rather than to consumers directly, see Response at 16, and the Court has concluded that the class must exclude individuals who only received mortgage statements through counsel, see supra at 10–11. However, to the extent the Court must determine whether statements were sent to counsel rather than the individual personally, that determination, although presenting an individualized inquiry, would not overwhelm the common issues in this case because it would involve the relatively straightforward task of examining the mailing address on the statement.

Carrington also asserts that evaluation of actual damages would involve an individualized inquiry. Response at 18–19. However, as previously discussed, the Court granted summary judgment in Carrington's favor as to Prindle's claim for actual damages and will deny Prindle's Motion to the extent it seeks certification of a subclass based on actual damages.

Prindle asserts that class resolution is superior to individual cases because the damages involved are relatively minor. Motion at 14. She also suggests that Carrington's net worth is high enough that the statutory damages cap would not significantly diminish the damages available to each class member. Id. In response, Carrington argues that there is insufficient evidence of the number of class members and no evidence of Carrington's net worth, so the Court has no way to determine the potential statutory damages available to each class member. Response at 20. In her Reply, Prindle contends that Carrington's "concern for the class members" is not credible, and it has not presented any evidence that any potential class member has already filed a separate action, nor does it contend that the forum is undesirable or that management of the class would be difficult. Reply at 13.

The fact that each putative class member's potential recovery would be small (at most, $1,000) weighs heavily in favor of finding a class action superior. Cf. Amchem Prods., 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation omitted)). However, the FDCPA caps total statutory damages in class actions to the lesser of (1) $500,000 or (2) 1 percent of the Carrington's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). As such, it is possible that statutory damages could be capped such that each class member would recover something less than he or she would be entitled to in an individual action.

Prindle states in conclusory fashion that Carrington's "net worth is indisputably large enough so as to call the $500,000 cap into play." Motion at 14. However, she points to no evidence to support that conclusion, and, despite arguing that a recovery might be

-18-

insufficient, Carrington provides no information as to this issue. If the $500,000 cap does apply in this case, then class adjudication would undoubtedly be the superior mechanism; assuming there would be between 40 and 125 class members, the maximum individual recovery of statutory damages would be unaffected. Indeed, based on that estimate of the class's size, Carrington's net worth would have to be less than $12.5 million before the cap would potentially begin to reduce individual recoveries. Notably, many courts, particularly in the FDCPA context, have certified classes under similar circumstances even when presented with the possibility of de minimis recoveries. See Hicks v. Client Servs., Inc., 257 F.R.D. 699, 700–01 (S.D. Fla. 2009) (collecting cases and certifying class even though statutory damages per class member would be between $1 and $5).

        In this case, for individual recoveries to be limited to $5 per class member, Carrington's net worth would have to be no more than $62,500. Given the limited damages available and the relatively small size of the proposed class, the Court declines to deny class certification based on speculation that the damages available for recovery would be insufficient. The sheer volume of business Carrington conducts strongly suggests that its net worth would be high enough that any individual recovery would be something more than de minimis. See Brackett Depo. at 51–52 (describing "small acquisitions" of loans as involving between 20 and 500 loans; discussing acquisition of more than 200,000 loans through large acquisitions from August 2014 to April 2015). Thus, the Court concludes that a class action would be superior to any other method of litigation.

### 6.    Class Definition

Having concluded that Prindle satisfies the Rule 23 requirements for class certification, the Court must determine whether Prindle's proposed class definition is appropriate. She proposes the following class definition:

> All Florida consumers who, within the applicable statute of limitations, (a) had or have a residential mortgage loan serviced by Defendant which Defendant acquired when in default; (b) received a Chapter 7 discharge of the mortgage debt; and who:
>
> > **Mortgage Statement Class**: were sent a billing letter in substantially the same form as the communication dated June 23, 2013, [sic[12]] in Exhibit C to the Revised Second Amended Complaint by Defendant referencing a mortgage debt discharged in Bankruptcy.

Id.[13]

Carrington argues in its Response that the proposed class definition is overbroad because (1) it is defined based on whether Carrington sent communications, not whether the individual class members actually received the communications, and (2) it includes people who sought and received or were denied similar relief in bankruptcy court or a civil case.[14] Response at 8–10. Prindle contends in her Reply that the class definition is appropriate. Reply at 2–5. She argues that there is a rebuttable presumption that an item mailed to an address was received there, and Carrington's failure to provide any evidence to rebut that presumption results in an inference that the evidence Carrington does have

---

[12] The mortgage statement is actually dated June 27, 2013. See Second Amended Complaint, Exhibit C (Doc. 58-3) at 5.

[13] Prindle's proposed class definition also includes a "Mortgage Modification Package Class" and an "Actual Damages SubClass." See Motion at 3–4. However, the Court granted summary judgment in favor of Carrington as to Prindle's claim based on the Loan Modification Package and her claim for actual damages. As such, those claims are no longer before the Court.

[14] Carrington also argues that Prindle's proposed class definition is overbroad because it fails to exclude individuals who requested a particular mortgage statement. Response at 8–9. However, the Court addressed that issue in the context of commonality because it bears on whether the "animating purpose" of the statement presents a common question.

is unfavorable to it. Id. at 3. She asserts that the FDCPA focuses on the conduct of the debt collector, so defining the class based on the communications sent, as opposed to received, is appropriate. Id. at 3–4. Finally, she asserts that Carrington's corporate representative testified that there are no other similar actions against it. Id. at 5.

Carrington argues that, by defining the class based on whether a communication was sent rather than whether it was received, the class definition "includes borrowers who could not possibly have incurred a sufficient injury for Article III standing." Response at 8 & n.5. As Prindle notes, see Reply at 3–4, several courts have approved class definitions similarly turning on whether the defendant sent the specific communication to the putative class members. See, e.g., Blandina v. Midland Funding, LLC, 303 F.R.D. 245, 250 (E.D. Pa. 2014) (rejecting defendant's argument that class definition was too broad because it included consumers who were sent communications, rather than just those who received them, because FDCPA liability is based on debt collector's conduct and does not turn on whether consumer actually received communication); Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 698, 701 (M.D. Fla. 2000) (certifying class based on communications sent); see also Roundtree v. Bush Ross, P.A., 304 F.R.D. 644, 656 & n.3 (M.D. Fla. 2015) (certifying class based on communications sent, but excluding "individuals for whom the initial written communication was returned as undeliverable"); Garland v. Cohen & Krassner, No. 08-CV-4626 (KAM)(RLM), 2011 WL 6010211, at *2 (E.D.N.Y. Nov. 29, 2011) (same). However, Carrington also cites a handful of cases, and in those cases class membership was defined based upon receipt of a communication. See Response at 8 (citing Sharf v. Fin. Asset Resolution, LLC, 295 F.R.D. 664, 668 (S.D. Fla. 2014); Klewinowski v. MFP, Inc., No. 8:13-cv-1204, 2013 WL 5177865, at *1 (M.D. Fla. Sept. 12,

2013); Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp., No. 8:08-cv-493, 2008 WL 3850657, at *2 (M.D. Fla. Aug. 14, 2008)).

Standing is jurisdictional. See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008). In ruling on a motion for class certification, a court's primary concern is whether the representative plaintiff has standing. See Prado-Steiman, 221 F.3d at 1279–80 ("[P]rior to certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). However, a class representative must "be part of the class and possess the same interest and suffer the same injury as the class members." Dukes, 564 U.S. at 348–49 (internal quotation marks omitted).

In deciding Carrington's Summary Judgment Motion, the Court concluded that, even in light of the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), Prindle has standing to pursue her own claims to the extent that she actually received the communications at issue. See Summary Judgment Order at 18–26. But to the extent Carrington merely sent a mortgage statement to an individual who did not receive it, the Supreme Court's decision in Spokeo instructs that such a person fails to allege the requisite "concrete" injury. This is so because such a person—one unaware of the existence of the mortgage statement—would not have been subjected to abusive debt-collection practices, so the right conferred by the FDCPA to be free from such practices would not be implicated. As such, the Court concludes that the class which

Prindle seeks to represent must be limited to those individuals who actually received a mortgage statement that had been mailed within the applicable time frame.[15]

Carrington asserts that the proposed class, whether based on communications sent or communications received, would include people who lack Article III standing, and, moreover, a determination of each class member's standing would present an "individualized" inquiry. Defendant's Supp. Brief at 10–11. The Court disagrees. Because receipt of the allegedly offending mortgage statement is _itself_ the injury in fact, a class definition limited to individuals who received such statements is not overbroad. Moreover, to the extent a person's standing depends on whether he or she received the communication, that consideration does not defeat class certification. The parties can easily filter out individuals without standing by simply asking the putative class members whether they viewed the mortgage statements at issue. That would not involve the type of fact-intensive exercise that could preclude class certification.

Carrington also argues that people who have sought, received, or were denied similar relief in bankruptcy proceedings or a civil case under similar state laws would have to be excluded from the class. Response at 9. However, it cites no authority for the proposition that one who obtained relief for violation of the Bankruptcy Code or state law is precluded from also seeking relief under the FDCPA. Absent evidence that any individuals in the proposed class have previously sought relief under the FDCPA, the

---

[15] To the extent Carrington asserts the Court should deny Prindle's Motion for class certification due to the overbreadth of her proposed class definition, see Response at 9–10; Defendant's Supp. Brief at 10, the Court disagrees. The Court is of the view that the appropriate remedy is to narrow the proposed class definition to include only those individuals who actually received a mortgage statement. The Court has broad discretion in determining whether to certify a class, see Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1169 (11th Cir. 2010), and the authority to determine the contours of the class definition.

mere speculation that the class might include such individuals is not a sufficient basis to deny class certification.

Although the Court concludes that a class is due to be certified as to Prindle's claim based on receipt of the June 2013 Statement, the Court will revise Prindle's proposed class definition to reflect the Court's conclusions on the issues previously discussed and to provide greater clarity. The Court determines that the following class definition accurately describes the putative class:

> All Florida consumers who (1) have or had a residential mortgage loan serviced by Carrington Mortgage Services, LLC, which Carrington obtained when the loan was in default; (2) received a Chapter 7 discharge of their personal liability on the mortgage debt; and (3) personally received a mortgage statement in connection with that discharged mortgage debt dated September 16, 2012, or later, that was in substantially the same form as the communication attached to the class notice.

This revised class definition reflects the Court's conclusion that the class must include only those individuals who personally received the allegedly offending mortgage statement within the applicable statute of limitations.[16] The members of this class "can be ascertained by reference to objective criteria," analysis of which will be "administratively feasible." See Bussey, 562 F. App'x at 787 (internal quotation marks omitted).

## IV.    Conclusion

In light of the foregoing, the Court concludes that Prindle's Motion is due to be granted in part and denied in part. The Motion is due to be denied to the extent Prindle seeks certification of a class based on receipt of the Loan Modification Package and a subclass based on actual damages because the Court has granted summary judgment

---

[16] The FDCPA's one-year statute of limitations begins to run the day after the allegedly unlawful communication was mailed. Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995). Because Prindle filed her original Complaint on September 17, 2013, any mortgage statement mailed on or after September 16, 2012, would be within the statute of limitations.

in Carrington's favor as to those claims. The Motion is due to be granted to the extent

Prindle seeks certification of a class based on receipt of the June 2013 Statement.

Accordingly, it is hereby

**ORDERED:**

1.     Plaintiff's Second Renewed Motion for Class Certification and Incorporated

Memorandum of Law (Doc. 107) is **GRANTED in part and DENIED in part**.

    a.     The Motion is **GRANTED** to the extent that this action shall proceed

as a class action pursuant to Rule 23(b)(3), Federal Rules of Civil

Procedure, as to Prindle's claim based on the June 27, 2013, mortgage

statement. The Court certifies the following class as to that claim:

> All Florida consumers who (1) have or had a residential
> mortgage loan serviced by Carrington Mortgage Services,
> LLC, which Carrington obtained when the loan was in default;
> (2) received a Chapter 7 discharge of their personal liability
> on the mortgage debt; and (3) personally received a mortgage
> statement in connection with that discharged mortgage debt
> dated September 16, 2012, or later, that was in substantially
> the same form as the communication attached to the class
> notice.

    b.     The Motion is otherwise **DENIED**.

2.     Plaintiff, Twyla Prindle, shall serve as the class representative, with Janet

Varnell, Esq., Brian Warwick, Esq., Steven Simmons, Esq., and Scott Borison,

Esq., serving as class counsel.

3.     Pursuant to Rule 23(c)(2)(B), the parties shall confer and submit to the

Court, on or before **September 23, 2016**, a joint proposed class notice plan and

form of notice. If the parties are unable to agree on a form of notice, the parties

shall each submit one on or before **September 23, 2016**, accompanied by a

memorandum explaining that party's position. Each party shall respond to the other's proposed notice plan and form of notice no later than **September 30, 2016**.

**DONE AND ORDERED** in Jacksonville, Florida, on August 24, 2016.

MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record