UNITED STATES DISTRCT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TWYLA PRINDLE, individually and on
behalf of a class of persons similarly situated,

     Plaintiff,                                  Case No.: 3:13-cv-01349-MMH-PDB

v.

CARRINGTON MORTGAGE
SERVICES, LLC,

     Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, TWYLA PRINDLE, individually and on behalf of all others similarly situated, ("Prindle" or "Plaintiff"), by and through her undersigned counsel, files this Memorandum of Law in Support of Joint Motion for Certification of Settlement Class and Preliminary Approval of the proposed Class Action Settlement.  In support of the motion, Plaintiff states as follows:

**I.**     **TERMS OF THE PROPOSED SETTLEMENT**

This is a class action seeking class wide relief for violation of the FDCPA to recover statutory damages on behalf of all those similarly situated pursuant to 15 U.S.C.A. § 1692k(a)(2)(B) and attorney's fees and the costs of this action under 15 U.S.C.A. § 1692k(a)(3).

Under the proposed Settlement, The Settlement Class is defined as:

All Florida consumers who (1) have or had a residential mortgage loan serviced by Carrington Mortgage Services, LLC, which Carrington obtained when the loan was in default; (2) received a Chapter 7 discharge of their personal liability on the mortgage debt prior to October 31, 2004; and (3) after receiving a discharge, personally received a mortgage statement in connection with that discharged mortgage debt dated September 16, 2012 through the date of the Preliminary Approval Order, in the same form as the communication attached to the class notice.

According to Carrington's records, there are approximately 775 individual accounts in the Class.  Subject to a confirming skip trace, Carrington has agreed to pay each Verified Class Member $350.00 in statutory damages pursuant to 15 U.S.C.A. § 1692k(a)(2)(B).[1]

Any funds remaining in the Settlement Administrator's account as a result of Class Members' failure to tender Settlement Checks for payment shall be disbursed to a *Cy Pres* recipient to be determined by the Court after proposals are submitted by each Party.

Carrington has also agreed to pay Plaintiff Prindle $8,000 representing her alleged actual damages and a Class Representative Award of $2,000 in exchange for a release of all her claims against Carrington.

Finally, Carrington has agreed to pay Class Counsel $300,000.00 in attorney fees and costs and to pay the cost of notice and class administration.

## II.     THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." In re U.S. Oil and Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, Ass'n for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an

---

[1] The Skip Trace procedure is intended to verify the "personal receipt" requirement of this Court's Class Definition, without undue burden and/or expense.

overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (*citing* Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class.   4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." Smith v. Wm. Wrigley Jr. Co., No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See* Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Granting preliminary approval will allow Settlement Class Members to receive notice of the proposed Settlement terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.  *See* Manual for Compl. Lit., §§ 13.14, 21.632.  However, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may or may not conduct a hearing.  Id. § 13.14.

### III. THIS SETTLEMENT FALLS WITHIN THE "RANGE OF REASONABLENESS" AS TO ITS FAIRNESS, ADEQUACY AND REASONABLENESS.

Because the Settlement Class was previously certified by this Court, the analysis turns exclusively upon the terms of the proposed settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class. 4 Newberg § 11.26. The Eleventh Circuit has enumerated six factors a district court should consider in evaluating the fairness, adequacy, and reasonableness of a class action settlement: (1) the plaintiff's likelihood of success on the merits, (2) the range of the plaintiff's possible recovery, (3) the point within the range of possible recovery at which settlement is fair, adequate, and reasonable, (4) the expected complexity, cost, and duration of litigation, (5) any opposition to the proposed settlement, and (6) the stage of the litigation at which settlement was reached. ("Faught Factors"). Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1240 (11th Cir. 2011).

At this preliminary approval stage, this Court can readily determine that each of the Faught fairness factors weighs in favor of preliminarily approving the terms of this Settlement. First, the Settlement was reached in the absence of collusion, and is instead the product of good-faith, informed and arm's length negotiations by competent counsel. Second, this matter is being settled by counsel experienced in this type of litigation after motions to dismiss, discovery, class certification, and a full day of mediation.

Third, a preliminary review of the Faught fairness factors, in light of the terms of the settlement, indicates that the terms of the Settlement appear to be fair, adequate and reasonable. Post the Motion to Dismiss and Summary Judgment, the only claims that remained were for statutory damages pursuant to § 1692(a)(2)(B) of the FDCPA, which limits statutory damages to 1% of the Defendant's Net Worth or up to $1,000 per person. Rather than litigate over the net

worth of Carrington, the parties agreed to settle for a payment of $350.00 per class member, or approximately $271,250.00. Regardless of the net worth of Carrington, this amount is very fair considering that no actual damages were recoverable and Defendants had a belief the statements complied with the law and did not attempt to collect on a discharged debt. Even if successful at trial, it is not clear that this Court would award individual statutory damages in excess of this amount. In fact, the vast majority of FDCPA class action settlements involve substantially smaller statutory recoveries. See e.g., Gonzalez v. Dynamic Recovery Solutions, LLC, 2015 WL 738329, at *4 (S.D.Fla. 2015) (FDCPA statutory damages claims to be dismissed in class action settlement in exchange for $15,000.00 *cy pres* payment to Legal Aid where individual recoveries would be too small); Harlan v. Transworld Systems, Inc., 302 F.R.D. 319, 326 (E.D.Pa. 2014) ($24.46 per class member FDCPA statutory damages approved); Lewinowski v. MFP, Inc., 2014 WL 1418263, at *1 (M.D.Fla. 2014) (Cy Pres award to Legal Aid approved due to small dollar amount of individual recovery of statutory FDCPA damages).

Even assuming Carrington's Net Worth provided for the statutory maximum of $500,000, the proposed Settlement provides for more than half that maximum value. Considering the complexity of the claims and that Carrington's position on liability, the compromise is certainly within the range of reasonableness such that preliminary approval should be granted. Accordingly, this Court should find that the proposed Settlement appears to be within the range of reasonableness such that notice should issue to the Settlement Class, a final Fairness Hearing should be scheduled, and the Settlement Class should be certified for settlement purposes.

## IV.    THE INCENTIVE AWARD FOR PLAINTIFF IS APPROPRIATE

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed an "incentive award." Many courts have

addressed incentive awards to class representatives as a means to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme.

Incentive awards are not uncommon in class action litigation where, as here, a common fund has been created for the benefit of the class. Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006)(citing In re Southern Ohio Corr. Facility, 175 F.R.D. 270, 272-76 (S.D.Ohio 1997)). Incentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation. Id. (citing Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb.18, 2005)).

While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. Allapattah Servs., 454 F. Supp. 2d at 1218-19. In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D.Ga.2001)(quoting In re Southern Ohio Corr. Facility, 175 F.R.D. 270, 272 (S.D.Ohio 1997)(collecting cases)); see also Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) (affirming award of $25,000 to named plaintiff); In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C.2002) ("Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.... In fact, [c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action

litigation") (internal quotations and citation omitted); <u>Godshall v. Franklin Mint Co.</u>, 2004 WL 2745890, at *6 (E.D.Pa. Dec.1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); <u>In re Linerboard Antitrust Litig.</u>, 2004 WL 1221350, at *18-19 (E.D.Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives); <u>Tenuto v. Transworld Sys.</u>, 2002 WL 188569, at *4-5 (E.D.Pa. Jan.31, 2002) (granting award of $2,000); <u>Dornberger v. Metropolitan Life Ins. Co.</u>, 203 F.R.D. 118, 124-125 (S.D.N.Y.2001) (approving an award of $10,000 for Dornberger and $1,500 for the eight sub-class representatives); <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 145 (E.D.Pa.2000) ("courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); <u>In re Lease Oil Antitrust Litig.</u>, 186 F.R.D. 403, 449 (S.D.Tex.1999) (granting awards of between $1,000 and $10,000); <u>In re Residential Doors Antitrust Litig.</u>, 1998 WL 151804, at *11 (E.D.Pa. Apr.2, 1998) (awarding an incentive award of $10,000 to each of the four Class representatives); <u>In re Plastic Tableware Antitrust Litig.</u>, 1995 WL 723175, at *2 (E.D.Pa. Dec.4, 1995) (granting award of $3,000); <u>In re Domestic Air Transp. Antitrust Litig.</u>, 148 F.R.D. 297, 357 (N.D.Ga.1993) (granting award of $2,000 to plaintiffs that produced documents and awarding $5,000 to plaintiffs that were also deposed).

In <u>Cook v. Niedert</u>, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations when evaluating an incentive award:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

<u>Cook</u>, 142 F.3d at 1015 (citation omitted).

Incentive awards are frequently approved in class actions where, as here, the plaintiff was extensively involved in discovery and litigation activities.   Extensive involvement encompasses producing documents, responding to discovery requests, sitting for depositions, attending or testifying at court hearings, participating in settlement negotiations, and consulting with class counsel on litigation strategy. *See, e.g.*, Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) (approving incentive awards of $5,000 to plaintiffs who substantially contributed to litigation and testified at the fairness hearing); Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 258–59 (D.N.J. 2005) (approving $10,000 incentive awards to plaintiffs who worked closely with counsel and were crucial to settlement, $3,000 incentive award to plaintiff who produced documents, appeared for deposition, and attended the fairness hearing, and $1,000 incentive award to plaintiff who only played a minor role in settlement negotiations); In re Lease Oil Antitrust Litig. (No. II), 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving higher incentive awards to plaintiffs who produced personal records, appeared for lengthy depositions, and attended hearings); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for deposition and $2,500 to plaintiffs who produced documents in discovery).

Here, Ms. Prindle is being paid a $2,000 incentive award in addition to her $8,000 in alleged damages under the FCCPA.  Although the class claims are being settled, Ms. Prindle has the legal right and ability to appeal this Court's decision regarding pre-emption of her FCCPA claim, which may revive her alleged actual damages incurred thereunder.  In exchange for her not appealing this issue, Carrington has agreed to pay Ms. Prindle $8,000 in alleged actual damages in addition to the $2,000 incentive award.

Ms. Prindle put in substantial time representing the class in this matter, including preparing extensive discovery responses, being deposed, and taking time off work to participate in a full day of mediation.  Accordingly, the full award set forth in the Settlement Agreement to Ms. Prindle should be approved.

## V.    PLAINTIFF'S ATTORNEY FEES AND EXPENSES

The proposed Settlement contemplates a payment of $300,000 in attorney fees and costs to Class Counsel.  The fee and expense negotiations were conducted at arm's-length after an agreement for the class had been reached and is being paid over and above the relief to the class. Payment of attorney fees and costs is in addition to the relief provided to the class and will not diminish the relief to the class.  Settlement agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after material terms of the settlement have been agreed to between the Parties. See, Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney fees").

Class counsel expended considerable time and effort on this matter.  First, the discovery proved to be difficult and time consuming as a result of the manner in which Carrington retained its records.  Second, and most importantly, the motions to dismiss and summary judgment arguments all involved complex issues and novel legal theories.  Counsel was required to show expertise in bankruptcy law, preemption, class actions, and the FDCPA.  This Court's extensive orders on these motions clearly shows the complex nature of the claims advanced herein.  Simply stated, this was not a run-of-the-mill FDCPA letter case.

As will be more fully set forth in Plaintiff's Memorandum of Law in support of Final Approval, the attorney fees and costs agreed upon by the parties represents less than the lodestar calculation for the three law firms representing the class.  Such a fee is certainly within the range of reasonableness such that notice should be issued to the class.  Therefore, this Court should find that the Attorney Fee segment of the Settlement Agreement also falls with the range of reasonableness to warrant granting of preliminary approval.[2]

**VI.    THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS**

Notice is an integral part of Rule 23(b)(3).  Class actions under this subdivision are only allowed when common questions of fact or law predominate and class-action treatment is thought to be superior to other available means of settling the controversy.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652 (1950).  Without the notice requirement, it would be constitutionally impermissible to give the judgment binding effect against the absent class members.  Notice to the class must be given before entry of judgment in order to allow class members the opportunity to either participate in the proceedings, or to opt out of the proceedings.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-176 (1974) (notice and opportunity to opt out required by due process).  Notice must be sent well before the merits of the case are adjudicated.  Brown v. Colegio de Abrogados de Puerto Rico, 613 F.3d 44, 51 (1st Cir. 2010) (The purpose of the rule regarding notice for a class action is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated.) The Eleventh Circuit's position on class notice in Rule 23(b)(3) certified class actions is one of strict adherence to due process.  Cohen v. Office Depot, Inc., 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that certification under Rule 23(b)(3) would require that the class members receive notice of the suit "well before the merits of it are adjudicated.") citing Schwarzschild v.

---

[2] Plaintiff's Counsel will submit a more detailed breakdown of their time in the case prior to Final Approval.

Tse, 69 F.3d 293, 295 (9th Cir. 1995); See also Fed. R. Civ. P. 23(c)(2); 7B Wright, Miller &

Kane.

For any class certified under Rule 23(b)(3), the court must direct to class members the

best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort. "The notice must clearly and concisely state in

plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so

desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(b)(3).

Exhibit 1 attached hereto is a proposed class notice which the parties believe satisfies the

requirements of Rule 23(b)(3), and which will provide Settlement Class Members with all the

information necessary to file claims, opt out, or file objections to this Settlement. Accordingly,

Plaintiffs request that this Court approve the Notice in the form of Exhibit 1, and that this Court

order notice be issued to the class upon preliminary approval by the due dates set forth in the

Settlement Agreement.

## VII.   SETTLEMENT TIMELINE

The Settlement Notice requirements of the Class Action Fairness Act ("CAFA") dictate that Notice be provided to the appropriate officials.  A court cannot enter an order giving final approval to the settlement until 90 days after the CAFA Notice is given. 28 U.S.C. § 1715.

Accordingly, the Parties propose the following schedule:

1.  Preliminary Approval Order signed by this Court;

2.  CAFA Notice issued by Defendant within 3 business days of Preliminary Approval Order;

3.  Settlement administrator to perform skip-trace of all potential class members within 10 days of Preliminary Approval Order;

4.  Notice to be issued to Verified Class Members by Settlement Administrator within 21 Days of Preliminary Approval;

5.  Opt-Out deadline 30 days before Final Approval Hearing;

6.  Objection deadline 30 days before Final Approval Hearing;

7.  Joint Motion for Final Approval and corresponding briefing by the Parties due 14 days before Final Approval Hearing; and

8.  Final Approval Hearing not less than 100 days from the date of the Preliminary Approval Order.

## VII.   CONCLUSION

For the reasons set forth above, this Court should enter the Proposed Preliminary Approval Order attached hereto as Exhibit 2 allowing notice to be issued to the class and taking

this Settlement to the next stage of resolution.

Dated:  December 15, 2016                         **VARNELL & WARWICK, P.A.**

                                           By:      /s/ Janet R. Varnell
                                                JANET R. VARNELL
                                                Florida Bar No.:  0071072
                                                BRIAN W. WARWICK
                                                Florida Bar No.:  0605573
                                                P.O. Box 1870
                                                Lady Lake, FL  32158
                                                Telephone: (352) 753-8600
                                                Facsimile:  (352) 504-3301
                                                jvarnell@varnellandwarwick.com
                                                bwarwick@varnellandwarwick.com
                                                kstroly@varnellandwarwick.com

                                                **MAX STORY, P.A.**
                                                Max Story
                                                Florida Bar No: 527238
                                                328 2nd Avenue North, Suite 100
                                                Jacksonville Beach, FL  32250
                                                Telephone:  (904) 372-4109
                                                Facsimile:  (904) 758-5333
                                                max@maxstorylaw.com

                                                **LEGG LAW FIRM, LLC**
                                                Scott Craig Borison (Pro Hac Vice)
                                                5500 Buckystown Pike
                                                Frederick, MD  21703
                                                Telephone: (301) 620-1016
                                                Facsimile:  (301) 620-1018
                                                Borison@legglaw.com

                                                Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>December 15, 2016</u>, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF:

Justin E. Hekkanen
Justin.hekkanen@akerman.com
Celia C. Falzone
celia.falzone@akerman.com
AKERMAN LLP
50 North Laura Street
Suite 3100
Jacksonville, FL  32202


William P. Heller
William.heller@akerman.com
Las Olas Center II, Suite 1600
350 East Las Olas Blvd.
Ft. Lauderdale, FL  33301-2229

Lawrence Silverman
lawrence.silverman@akerman.com
One S.E. Third Avenue
25th Floor
Miami, FL 33131-1714


/s/ Janet R. Varnell
Janet R. Varnell